953 P.2d 921

**FARMERS INSURANCE COMPANY, an Arizona corporation; and Michael Larson, Plaintiffs–Appellees, Cross Appellants,**

v.

**Brian TALLSALT, Defendant–Appellant, Cross Appellee.**

**No. 1CA-CV 96–0192.**

Court of Appeals of Arizona, Division 1, Department A.

July 17, 1997.

As Amended Aug. 25, 1997.

Review Granted April 21, 1998.

Aspey, Watkins & Diesel, P.L.L.C. by James E. Ledbetter and Whitney Cunningham, Flagstaff, for Plaintiffs–Appellees, Cross Appellants.

Law Office of John Trebon by John J. Trebon, Flagstaff, for Defendant–Appellant, Cross Appellee.

## OPINION

FIDEL, Presiding Judge.

This case arises from an intersection collision between Brian Tallsalt, an uninsured motorist, and Michael Larson, who carried uninsured motorist and property damage coverage with Farmers Insurance Company of Arizona ("Farmers"). Farmers paid Larson for personal injuries and property damage and filed a subrogation action against Tallsalt, who counterclaimed for personal injuries and property damage. There is evidence of fault on both sides.

After an arbitrator awarded no damages to either party, Farmers appealed to the superior court, Tallsalt cross-appealed, and the case proceeded to trial by jury. Farmers sought $30,392.30, which was stipulated to be the sum it had paid Larson, and Tallsalt sought $5,000.00, the stipulated value of his "totalled" car. The jury signed a form of verdict that set Farmers' damages at $30,392.30 and found Larson 91.25% at fault and Tallsalt 8.75% at fault. The jury did not sign a separate form of verdict with respect to Tallsalt's damages. The trial court entered judgment awarding Farmers $2,500.00 on its claim and Tallsalt nothing on his counterclaim.

■ When an appellant from arbitration does not achieve a judgment "more favorable by at least 10% than the monetary relief, or more favorable than the other relief, granted by the arbitration award," the appellee is entitled to an award of taxable costs and attorneys' fees for services necessitated by the appeal from arbitration. Ariz.Unif. R.P.Arb. 7(f). Both parties requested such an award, Tallsalt in the amount of $6,757.00, and Farmers in the amount of $9,203.39. In the judgment, the trial court ruled that Farmers was entitled to taxable costs and reasonable attorneys' fees. By separate minute entry, however, the trial court limited this recovery to $1,500.00.[1]

Both sides appeal. Tallsalt attacks the award of costs and fees to Farmers, arguing

---

1. The signed judgment awards Farmers fees and costs but does not state the amount. The amount is contained in an unsigned minute entry that the court entered on the same date. We deem the omission of the amount from the judgment a clerical error correctable pursuant to Rule 60(a), Arizona Rules of Civil Procedure. However, our disposition obviates the need for a correction.

that Farmers should have received none and, instead, should have been ordered to pay Tallsalt's costs and fees. Farmers cross-appeals, arguing that the damage verdict was inadequate and that the trial court erred by awarding it only a reduced amount of costs and fees.[2]

We will provide further facts and procedural history as they become relevant to the issues that we discuss.

## IRREGULARITY OF VERDICT

### A.

Tallsalt and Larson collided at the intersection of Milton and Riordan Roads in Flagstaff. Tallsalt, southbound on Milton, was turning left to travel eastward on Riordan. Larson, exiting a shopping center on the southwest corner of the intersection, accelerated diagonally across Milton to the northbound curb lane and into the intersection, attempting to make it past the traffic light before it turned red.

At trial, the parties disputed fault, including the causal significance of Larson's diagonal passage across Milton, the color of the traffic light, and whether Tallsalt should have seen and avoided Larson, whatever the color of the light.

Farmers does not deny that the evidence permitted the finding that Larson was 91.25% at fault and Tallsalt 8.75% at fault. Farmers argues, however, that the record demonstrates that the jury did not apportion fault in this manner and that the verdict and judgment based on those percentages should not stand. This argument arises in part from the forms of verdict that the jury did and did not return.

The trial court gave the jury four forms of verdict. One was to be used if the jury found *Tallsalt* 100% at fault; a second one was to be used if the jury found *Larson* 100% at fault. The jury used neither. The remaining two forms provided for the assessment of comparative fault if the jury found negligence on both sides. One provided a space to assess *Tallsalt's* damages and provided additional spaces to assess the parties' relative degrees of fault. The other provided a space to assess *Farmers' and Larson's* damages and provided additional spaces to assess the parties' relative degrees of fault. Of these two forms, the jury returned only the latter.[3]

The court questioned the foreman about a note which suggested that the jury had attempted to assign percentages that would provide Farmers $2,500.00 on its claim:

THE COURT: And also, for the record, there was a note that was passed to the Court recently that corresponds with the verdict, and it's a matter of record now, but let me just ask the foreperson in regards to the percentages.

It appeared from the note that although the percentages are close, ... you didn't have a calculator, and your intent was $2,500; is that what we are talking about?

[FOREMAN]: Yes.

Neither counsel requested that the jury be questioned further regarding its method of calculating percentages of fault. Tallsalt's attorney, however, asked the court to inquire whether the $2,500.00 award for Farmers meant that nothing was awarded on the counterclaim. The record proceeds as follows:

THE COURT: I could only assume that that's exactly what that means, that the verdict is for the Plaintiff in the amount of $2500.

Is there anything I've just said that's wrong, sir?

[FOREMAN]: As far as I'm concerned, no.

---

2. Farmers also claims that various evidentiary errors entitle it to a new trial. We discuss and reject those arguments in a separate memorandum decision pursuant to Rule 28, Arizona Rules of Civil Appellate Procedure.

3. The form that the jury returned provided:

We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths do find in favor of plaintiff's [sic] FARMERS INSURANCE CO., and MICHAEL LARSON, and find the full damages to be *$30,392.30*

We find the relative degrees of fault to be:

| | |
|---|---|
| Plaintiff | 91.25% |
| Defendant | 08.75% |
| Total | 100% |

THE COURT: All right. Does anybody want the jury polled?

[PLAINTIFFS' COUNSEL]: No, I don't want the jury polled.

[DEFENDANT'S COUNSEL]: No, Your Honor.

The trial court ultimately entered judgment on the verdict, awarding Farmers $2,500.00.[4]

### B.

From this sequence of events, Farmers argues that the jury's failure to award Tallsalt anything on his counterclaim demonstrates that it really believed Tallsalt to be 100% at fault for the accident. Building on this premise, Farmers argues that the jury should have awarded Farmers its full damages of $30,392.30. It attributes the jury's actual fault percentages to a wrongful effort to manipulate the assessment of fault in order to drastically reduce Farmers's damage award. These irregularities, according to Farmers, entitle it to a new trial.

We disagree. First, the jury demonstrably did not find Tallsalt 100% at fault. The jury had the option to return a verdict form that found him 100% at fault; it did not do so. The jury unambiguously assessed Farmers' relative degree of fault to be 91.25% and Tallsalt's relative degree of fault to be 8.75%. The suggestion that the jury really meant these numbers to be 0 and 100% is preposterous.

Further, Farmers is mistaken in urging that the jury returned a verdict against Tallsalt on his counterclaim. It failed to return *any* verdict pertaining to the counterclaim. A likely explanation is that the jury was confused by the forms of verdict that it received.

Farmers' counsel recognized before the forms were submitted that the trial court risked confusing the jury by submitting two forms for the assessment of comparative fault instead of one. Counsel prudently suggested that it would be preferable to provide only one form of verdict for a finding that both sides were negligent—a form that would assess *both parties'* damages and their

relative degrees of fault. The trial court unfortunately rejected this suggestion, and the jury failed to recognize that it needed to return both of the comparative fault forms of verdict in order to resolve both the claim and counterclaim.

■ Because the jury verdict failed to address the counterclaim, the verdict was "not responsive to [an] issue submitted to the jury." Ariz. R. Civ. P. 49(c). Pursuant to Rule 49(c), either party might have asked the trial court to "call the jurors' attention thereto, and send them back for further deliberation." Neither party did so. Although Tallsalt's attorney asked the trial court to question the jury about the counterclaim, the trial court's question to the foreman was inadequate to resolve the matter. Both sides thereafter let the matter pass.

Tallsalt, who may have been aggrieved by this defect in the verdict, did not seek to remedy or appeal it. Farmers, which does appeal it, did not invoke the opportunity that Rule 49(c) provided in the trial court to clarify the verdict. If Farmers had indeed wished to find out whether the jury deliberately awarded Tallsalt nothing on his counterclaim because it found him totally at fault, Farmers' counsel should have asked the trial court to require the jury to reach a verdict on the counterclaim pursuant to Rule 49(c). By doing so, however, Farmers would have risked that the jury would award Tallsalt 91.25% of his damages on the counterclaim. By avoiding this risk in the trial court, Farmers may have achieved a windfall. It has no basis for complaint upon appeal.

■ Farmers also argues that the jury improperly manipulated the verdict, as demonstrated by the foreman's disclosure that the jury had selected a percentage that would yield a damage award of $2,500.00. We disagree. The jury apparently regarded a $2,500.00 recovery for Farmers on its stipulated $30,392.30 damage claim as proportionate to the parties' relative degrees of fault and attempted to fine-tune the percentages accordingly. This was undoubtedly not the first jury to proceed in such a fashion. Its verdict was not disproportionate to the evidence, and we find no departure from substantial justice.

4. This was a rounded verdict; 8.75% of $30,- 392.30 is $2,507.36.

To justify reversal, trial error must be prejudicial to the substantial rights of the appealing party. *Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982). We find no reversible error here.

## APPEALS FROM ARBITRATION; ATTORNEYS' FEES AND COSTS

Arbitration Rule 7, which permits *de novo* appeal of arbitration awards to the trial court, provides in relevant part:

> If the judgment on the trial de novo is not *more favorable by at least 10% than the monetary relief,* or *more favorable than the other relief, granted by the arbitration award,* the court shall order ... that the appellant pay ... the following costs and fees unless the Court finds on motion that the imposition of the costs and fees would create such a substantial economic hardship as not to be in the interests of justice:
>
> . . . .
>
> (ii) To the appellee, those costs taxable in civil actions together with reasonable attorneys' fees as determined by the trial judge for services necessitated by the appeal....

Ariz.Unif.R.P.Arb. 7(f) (emphasis added). Both parties claim entitlement to a fee award under this rule. Both parties are mistaken.

Under the express terms of Rule 7(f) (the "Rule"), one can only establish entitlement to a fee award upon appeal from arbitration if the arbitrator granted "monetary relief" or "other type of relief." In this case, the arbitrator granted neither. Instead, he denied both parties relief, finding that Farmers had "failed to carry [its] burden of proof on the Complaint" and that Tallsalt had "failed to carry his burden of proof on his Counter claim." Because the award provides no predicate for the determination of fees under Rule 7(f), this case exposes a gap within the Rule.

Both parties make creative efforts to leap the gap. Farmers, for instance, presents itself as having bettered its "monetary relief" by at least 10% by going from zero to $2,500.00 while Tallsalt failed to do so by going from zero to zero. The flaw in this argument is that only when an arbitrator provides *some* monetary or other type of relief does the award provide a means to measure what exceeds or falls short of a 10% improvement. It has no greater meaning to describe $2,500.00 as a better than 10% improvement over zero than to describe $1.00 as a better than 10% improvement over zero. Because one cannot calculate 10% of zero, it is meaningless to describe any amount as more or less than 10% of zero.

Farmers argues, alternatively, that, even if the Rule's "monetary relief" standard does not apply, Farmers is entitled to a fee award under the Rule's "other type of relief" standard. Farmers and Larson satisfied the "other type of relief" standard, the argument continues, because the jury's assessment of relative degrees of fault "improved [Farmers' and Larson's] position against [Tallsalt] from zero to 8.75 percent"; because the "other type of relief" standard is not subject to a 10% requirement, this improvement in position sufficed to support a fee award.

There are two flaws in Farmers' argument. First, assuming that the assessment of relative degrees of fault constitutes "other type of relief" under the Rule, then Tallsalt improved his position from zero to 91.25%, which would exempt him from owing a fee award. Second, and more fundamentally, there was no "other type of relief" in this award. Whatever "other type of relief" means within the context of Rule 7(f), the arbitrator granted none. Just as there was no monetary relief, there was no other relief to serve as a predicate for determining entitlement to a fee award.

Farmers also argues that its superior entitlement to a fee award is supported by the principle that, in Arizona, "a party [is] 'successful' if he obtains judgment for an amount in excess of the set off or counterclaim allowed." *Sanborn v. Brooker & Wake Property Management, Inc.,* 178 Ariz. 425, 430, 874 P.2d 982, 987 (App.1994) (quoting *Ocean West Contractors, Inc. v. Halec Constr. Co.,* 123 Ariz. 470, 473, 600 P.2d 1102, 1105 (1979)). We do not disagree that Farmers, by this measure, was the more successful party. Being the more successful party, however, does not establish entitlement to attorneys' fees under Rule 7(f). The fee award to Farmers cannot stand.

We next consider two arguments that Tallsalt advances on cross appeal to establish his entitlement to a fee award under Rule 7(f). First, Tallsalt argues that "monetary relief" should be interpreted to encompass "relative degree of fault" in cases involving comparative fault; because Farmers' *de novo* appeal succeeded only in raising Tallsalt's assessed level of fault from zero to 8.75%, Farmers did not better its "monetary relief" by at least 10%. This argument, in addition to suffering from many of the flaws previously described, seeks to engraft onto the Rule what is not there. Rule 7(f) does not designate improving one's relative degree of fault as a benchmark for entitlement to attorneys' fees; it establishes "monetary relief." The two are not the same.

Second, Tallsalt argues that, for lack of any benchmark in the arbitrator's award, we should take our measure from what Farmers was seeking in its *de novo* appeal. Because $2,500.00—the judgment Farmers achieved—is less than 10% of $30,392.30—the judgment that it sought, Farmers did not improve its position by 10%, according to this argument, and therefore should be required to pay Tallsalt's fees. This argument again attempts to engraft onto the Rule what is not there. Rule 7(f) does not provide for a fee award to an arbitration appellee when the appellant fails to obtain 10% of the relief it seeks.

As we have indicated, the parties' arguments expose a gap within Rule 7(f).[5] Whether that gap should be filled by amendment or revision is a subject we commend to the study of the Civil Practice and Procedure Committee of the State Bar of Arizona. We decline to fill the gap, however, by straining the language of the present rule. Because the arbitrator's award granted neither "monetary relief" nor "other type of relief," it provided no basis for a Rule 7(f) assessment of attorneys' fees against either party in this case.[6]

## CONCLUSION

The trial court's damage judgment in favor of Farmers is affirmed; the trial court's fee award to Farmers is reversed; both parties shall be responsible for their own attorneys' fees in the trial court. Though both sides have requested attorneys' fees on appeal, neither party has established a legal basis for such an award, and both requests are denied. Pursuant to Arizona Revised Statutes Annotated § 12–342 (1992), however, Farmers is entitled to taxable costs in the trial court, and Tallsalt is entitled to taxable costs on appeal.

RYAN and TOCI, JJ., concur.

---

**5.** Among other omissions, the Rule does not explain what "other type of relief" than "monetary relief" an arbitrator might provide, given that compulsory arbitration is only available when "No party seeks affirmative relief other than a money judgment." Ariz. Unif. R.P. Arb. 1(b)(1). Nor has either party offered a meaningful answer to that question.

**6.** Because of this conclusion we need not consider Farmers' argument that the trial court lacked authority to *reduce* its fee award under Rule 7(f). Nor need we consider Tallsalt's argument that he should be exempt from Rule 7(f) because he declared his willingness to accept the arbitrator's award and made his cross appeal conditional to preserve his position in the event that Farmers proceeded with its appeal.