336 P.3d 167

Susan M. FISHER, Appellant,

v.

Amy L. EDGERTON, Appellee.

No. 1 CA–CV 13–0428.

Court of Appeals of Arizona,
Division 1.

Sept. 30, 2014.

DeCiancio Robbins, PLC, by Christopher Robbins and Joel DeCiancio, Tempe, Counsel for Appellant.

Dickinson Wright/Mariscal Weeks, PLLC by Timothy J. Thomason, Phoenix, Counsel for Appellee.

Judge DONN KESSLER delivered the decision of the Court, in which Presiding Judge KENTON D. JONES and Judge MARGARET H. DOWNIE joined.

## OPINION

KESSLER, Judge.

¶ 1 Appellant Susan M. Fisher appeals the superior court's award of attorneys' fees, expert witness fees, and taxable costs pursuant to Arizona Rule of Civil Procedure ("Rule") 77(f) against Fisher in favor of her co-defendant, Appellee Amy L. Edgerton. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 After a three-car, rear-end accident, the plaintiff alleged that Fisher and Edgerton, who were driving separate vehicles behind her, were at fault. After compulsory arbitration proceedings, the arbitrator determined Fisher was 100% at fault and awarded plaintiff $29,653.70 and taxable costs in the amount of $499 against Fisher.

¶ 3 Fisher filed a notice of appeal seeking trial de novo in the superior court naming both the plaintiff and Edgerton. *See* Ariz. R. Civ. P. 77(a), (c). After a four-day trial, a jury determined Fisher was entirely at fault for the accident, but awarded the plaintiff only $20,000 in damages against Fisher.

¶ 4 Pursuant to Rules 77(f) and 54(g), Edgerton applied for attorneys' fees and costs against Fisher. Fisher opposed the motion, arguing that Edgerton's remedy was against the plaintiff because "Edgerton was brought into this case by the Plaintiff .... [and] alleged to be comparatively at fault by the Plaintiff." Relying upon *Valler v. Lee*, 190 Ariz. 391, 949 P.2d 51 (App.1997), and *Orlando v. Superior Court*, 194 Ariz. 96, 977 P.2d 818 (App.1998), Fisher maintained she "did not have the option of not appealing against Defendant Edgerton [because] Plaintiff named Edgerton as a Defendant alleging a claim that required compulsory joinder." Fisher also asserted if Rule 77 requires her to pay Edgerton's fees and costs even though the result of trial was 23% or more favorable to Fisher than arbitration, it would chill the

right to trial de novo and therefore be unconstitutional in violation of Article 2, Section 23, of the Arizona Constitution.

¶5 The superior court awarded Edgerton nearly $16,000 against Fisher, including approximately $12,160 in attorneys' fees, $1942 in expert witness fees, and $1223 in taxable costs. Fisher timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (Supp. 2013).

## DISCUSSION

### I. Issues and Standard of Review

¶6 Fisher first contends the award violates the language and spirit of Rule 77. More specifically, she argues she is not subject to an award of fees and costs because she did more than 23% better on appeal based on the lower amount of damages awarded the plaintiff. Alternatively, she argues she had to appeal from the entire arbitration award, and if anyone is liable for fees and costs, it should be the plaintiff who filed an unwarranted claim against Edgerton and did not seek to dismiss her claims against Edgerton at trial. Second, Fisher argues awarding fees here violates several constitutional rights. The award allegedly violates due process because she did not have fair notice about the amount of fees she might face by appealing the arbitration award. Additionally, the award allegedly violates equal protection because there is no rational basis to award attorneys' fees against someone who only causes minor damage and is subject to Rule 77 arbitration compared to someone who causes more damage and is not subject to Rule 77 arbitration and such an award. She also argues the award chills her fundamental right to appeal and have a jury trial.

¶7 We review issues of statutory or rule construction de novo. *State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, 109, ¶19, 290 P.3d 1226, 1232 (App.2012); *State v. Sanders*, 205 Ariz. 208, 217, ¶38, 68 P.3d 434, 443 (App.2003). If the language of the statute or rule is clear, we apply that language as the best indicator of the drafters' intent. *Mathis*, 231 Ariz. at 109, ¶19, 290 P.3d at 1232; *Sanders*, 205 Ariz. at 217, ¶38, 68 P.3d at 443. If the language is ambiguous, we turn to other factors to discern the drafters' intent. *Mathis*, 231 Ariz. at 109–10, 119, 290 P.3d at 1232–33. We also review constitutional issues de novo. *In re Estate of Snure*, 234 Ariz. 203, 204, ¶5, 320 P.3d 316, 317 (App.2014). We presume Arizona statutes and rules are constitutional unless the plaintiff can rebut that presumption beyond a reasonable doubt. *Niehaus v. Huppenthal*, 233 Ariz. 195, 197, ¶5, 310 P.3d 983, 985 (App.2013). When a statute is challenged on its face on equal protection grounds, the plaintiff must show that it would be invalid under all circumstances. *Hernandez v. Lynch*, 216 Ariz. 469, 472, ¶8, 167 P.3d 1264, 1267 (App.2007).

### II. Rule 77(f) and A.R.S. § 12–133

¶8 Rule 77 is derived from A.R.S. § 12–133 (Supp.2013) and governs the right of appeal from compulsory arbitration proceedings. As relevant here, Rule 77(f) provides, "If the judgment on the trial *de novo* is not more favorable by at least twenty-three percent (23%) than the monetary relief, or more favorable than the other relief, granted by the arbitration award ... the court shall order ... that the appellant pay" the appellee's taxable costs and reasonable attorneys' fees and expert witness fees. *See also* A.R.S. § 12–133(1).[1]

---

1. For purposes of convenience, we will refer to Rule 77 alone, given that the same relevant provisions also appear in A.R.S. § 12–133. Section 12–133(A) provides in pertinent part that the "superior court, by rule of court, shall ... 1. Establish jurisdictional limits of not to exceed sixty-five thousand dollars for submission of disputes to arbitration. 2. Require arbitration in all cases which are filed in superior court in which the court finds or the parties agree that the amount in controversy does not exceed the jurisdictional limit." Pursuant to A.R.S. § 12–133(1),

if the judgment at a trial de novo on appeal from an arbitration award is "not at least twenty-three per cent more favorable than the monetary relief or other type of relief granted by the arbitration award, the court ... shall order ... the appellant pay ... [to the appellee, taxable costs, reasonable attorney fees necessitated by the appeal, and reasonable expert witness fees incurred by the appellee in connection with the appeal] unless the court finds ... that the imposition of the costs and fees would create such a substantial

¶ 9 Fisher argues the award to Edgerton is contrary to the express language, purposes, and spirit of the Rule. Fisher first contends she could only appeal from the entire award and since she did at least 23% better on damages, she should not be subject to a fee award under Rule 77.[2] We disagree.

¶ 10 Although Fisher is correct she could only appeal from the entire award, including the arbitrator's finding Edgerton was not liable, this does not preclude an award of attorneys' fees and costs against Fisher, who actively and unsuccessfully litigated in the superior court that Edgerton was liable. When there are allegations that multiple defendants may be comparatively at fault and the arbitrator finds one defendant entirely at fault, any appeal from that award by the unsuccessful defendant is from the entire award unless the parties stipulate the successful co-defendant can be dismissed from the action on appeal. The purpose of this approach is to have the entire case, including the comparative fault contentions, tried together in the superior court. *Valler,* 190 Ariz. at 395, 949 P.2d at 55 ("[W]hen a trier [of fact] is likely to assess fault against at least one if not both of the defendants and find in favor of plaintiff ... a single trial of all issues is ... envisioned by Arizona's comparative fault statute, [A.R.S.] § 12–2506(C) [ (2003) ], which provides in part: 'The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned *as a whole at one time by the trier of fact.'* ").[3]

¶ 11 We disagree with Fisher that Rule 77 exempts an appealing defendant from having to pay a successful co-defendant's reasonable attorneys' fees when the appealing defendant unsuccessfully attempts to shift fault to the co-defendant. We reject Fisher's argument that because Rule 77(f) only refers to an appellant (Fisher) obtaining a ʲ23% more favorable judgment at the trial de novo, the express language of Rule 77(f) bars an award of fees to a co-defendant (Edgerton). Fisher ignores that Rule 77(f) also provides that fees shall be awarded if the judgment after the trial de novo is not "more favorable than the other relief, granted by the arbitration award." Because only monetary claims are subject to compulsory arbitration, Ariz. R. Civ. P. 72(b), we interpret the term "other relief" in Rule 77(f) to include comparative fault determinations between or among multiple defendants when the appealing defendant unsuccessfully seeks to shift a percentage of fault in the award to a co-defendant. In cases such as this, where Fisher actively sought to reduce her allocation of fault by shifting fault to Edgerton, the two co-defendants are adverse parties regarding comparative fault and, if the appealing defendant cannot shift at least 23% more of the liability to her co-defendant, Rule 77(f) expressly requires an award of reasonable attorneys' fees and costs.[4] *See Yoon v. Keeling,* 91 Wash.

economic hardship as not to be in the interest of justice."

2. Fisher argues for the first time in her reply brief that because Edgerton did not assert a cross-claim or obtain an arbitration award against her, "Rule 77(f) did not even apply." We will not consider this argument because it was raised neither in the superior court nor in the opening brief. We generally do not consider arguments made for the first time in a reply brief. *Dawson v. Withycombe,* 216 Ariz. 84, 111, ¶ 91, 163 P.3d 1034, 1061 (App.2007); *see also McDowell Mountain Ranch Land Coal. v. Vizcaino,* 190 Ariz. 1, 5, 945 P.2d 312, 316 (1997) (stating parties may not raise arguments for the first time on appeal); *State v. Lopez,* 223 Ariz. 238, 240, ¶ 6, 221 P.3d 1052, 1054 (App.2009) (explaining that this rule serves "to avoid surprising the parties by 'deciding their case on an issue they did not present' and to prevent the court from 'deciding cases with no research assistance or analytical input from [both] parties.' " (citation omitted)).

3. An exception applies when joinder of all parties is not necessary, such as when multiple plaintiffs bring an action against a defendant, each plaintiff's claims can be separately litigated, and the unsuccessful defendant only names one of the plaintiffs in the appeal from the award. *Orlando,* 194 Ariz. at 98, ¶¶ 9–11, 977 P.2d at 820.

4. In a supplemental filing, Fisher relies on *Farmers Insurance Co. v. Tallsalt,* 191 Ariz. 177, 953 P.2d 921 (App.1997), *vacated,* 192 Ariz. 129, 962 P.2d 203 (1998), to argue that the term "other relief" in Rule 77(f) cannot mean allocations of comparative fault. We disagree. *Tallsalt* involved an award of fees when an arbitrator awarded nothing to either the plaintiff or defendant and on appeal the jury allocated fault and awarded one of the parties monetary relief. 191 Ariz. at 178, 953 P.2d at 922. The court of

App. 302, 956 P.2d 1116, 1117 (1998) (holding that defendant appealing arbitration was required to pay co-defendant's attorneys' fees because defendant unsuccessfully sought to shift fault to co-defendant at trial de novo after which defendant was found to have a higher percentage of fault even though defendant's total liability was less than the arbitration award due to a settlement with plaintiff).

¶ 12 Fisher does not dispute Edgerton's assertion that Fisher actively sought to shift fault to Edgerton both in the arbitration and at the trial de novo. This is confirmed by the parties' pre-trial statement. As a result, from Edgerton's perspective, Fisher was an adverse party as to liability and Edgerton was successful at the trial de novo because the jury found Fisher completely at fault. Thus, Fisher's failed effort to shift some percentage of the liability to Edgerton entitled Edgerton to a Rule 77(f) award of fees and costs. Fisher's argument may have more force when an appealing defendant does not seek to shift liability to a co-defendant, but that is not the issue before us.[5] The sole issue before us is whether Rule 77(f) applies between multiple defendants when the appealing defendant unsuccessfully tries to shift comparative fault to the appellee defendant at the trial de novo.

¶ 13 Fisher's argument that no fees can be awarded to Edgerton if the judgment at the trial de novo awards at least 23% less relief to the plaintiff also leads to absurd results. Assume a plaintiff sues two defendants and the arbitration award is $10,000 against Defendant 1 and $10,000 against Defendant 2.

Plaintiff then appeals and obtains a judgment of $30,000 against Defendant 1, but zero against Defendant 2. By Fisher's theory, because there is only one judgment and the plaintiff did at least 23% better against Defendant 1, Defendant 2 cannot obtain an award of Rule 77(f) fees against the plaintiff despite Defendant 2 obtaining a more favorable judgment. This undercuts the purpose of Rule 77(f)—to deter marginal appeals—and leaves Defendant 2 without any remedy from the marginal appeal taken against her.

¶ 14 Fisher contends that if Edgerton is entitled to a Rule 77 award, it should be imposed against the plaintiff for naming Edgerton in the complaint when there was no basis for Edgerton's liability and not offering to stipulate to dismiss the claims against Edgerton at the trial de novo. As Fisher construes it, her appeal from the arbitration award was really a de facto appeal by the plaintiff.

¶ 15 We do not find this argument persuasive. There was only one appeal, that brought by Fisher. Plaintiff had no duty to appeal the arbitrator's award nor did she have a duty to stipulate to dismiss Edgerton in the trial de novo. Fisher's argument "overlooks the fact that, by not appealing, [P]laintiff signaled [her] willingness to abide by the arbitration award in its entirety." *Valler*, 190 Ariz. at 395, 949 P.2d at 55. Although in this context an appeal from an arbitration award by one party causes a trial de novo as to all parties, for purposes of Rule 77(f), Fisher was the only appellant and both Plaintiff and Edgerton were appellees.[6] By

---

5. It is unclear whether the superior court awarded all of Edgerton's attorneys' fees, even to the extent those fees were not incurred in defending against claims of Edgerton's comparative fault. However, Fisher does not argue the amount of fees was unreasonable on this basis.

6. Fisher argues that Rule 77(f) refers to appellant and appellee in the singular. However, Arizona's rules of statutory construction provide that "[w]ords in the singular number include the plural, and words in the plural number include the singular." A.R.S. § 1–214(B) (2002); *see also N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 305, ¶ 18, 93 P.3d 501, 505 (2004).

appeals held that zero was not a number and thus no award of fees was possible based on a percentage of improvement from either the monetary or "other relief" in the arbitration award. *Id.* at 181, 953 P.2d at 925. The supreme court vacated that decision and held that zero is a number to calculate the percentage improvement of monetary relief. *Tallsalt*, 192 Ariz. at 130, ¶¶ 6–8, 962 P.2d at 204. The court of appeals' vacated decision has no precedential value. Moreover, that opinion dealt with an improvement in allocation of fault from zero to a finite number, with the court holding that zero cannot be a number to use to determine Rule 77(f) fees. *Tallsalt*, 191 Ariz. at 181, 953 P.2d at 925. Here, there was a finite allocation of fault in the arbitration award and Fisher attempted to improve the allocation but failed to do so by at least 23%.

filing her appeal from arbitration, Fisher took the risk that if she was not able to obtain a judgment that was at least 23% more favorable to her as to the plaintiff, she would be subject to a Rule 77(f) award to the plaintiff. By seeking to shift liability to Edgerton on appeal, Fisher took the risk that if she could not obtain a judgment that was at least 23% more favorable as to Edgerton, she would be subject to a Rule 77(f) award to Edgerton. Fisher's argument is particularly unavailing given that she did not pursue a stipulation to such dismissal and actively contended Edgerton was the party at fault throughout the proceedings. Because it did not occur here, we do not address the situation of a plaintiff's refusal to stipulate with an appealing defendant to dismiss a co-defendant from the trial de novo.

¶ 16 Fisher also argues that but for our decision in *Valler* she could have filed a notice of appeal against the plaintiff only and designated Edgerton as a non-party at fault. She contends "[a]ll issues of law and fact could have been resolved *without Edgerton appearing,* including the allocation of fault between the parties and non-parties." This ignores that the plaintiff named Edgerton as a defendant, Edgerton participated in the arbitration, and Edgerton did not settle with the plaintiff before the trial de novo. *See, e.g.,* A.R.S. § 12–2506(B) ("In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury ... regardless of whether the person was, or could have been, named as a party to the suit.... [F]ault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with ... court rule...."). As a named party and participant in the arbitration proceedings, Edgerton had a right, like Fisher, to defend herself against the plaintiff and Fisher at a trial de novo. *See* A.R.S. § 12–133(H) ("Any party to the arbitration proceeding may appeal from the arbitration award...."); Ariz. R.

Civ. P. 77(a) ("Any party who appears and participates in the arbitration proceedings may appeal from the award or other final disposition....").

■ ¶ 17 Nor can we agree with Fisher that awarding Edgerton's fees violates the spirit and purpose of the Rule. The intent of Rule 77(f) "is to discourage parties from pursuing marginal appeals of arbitration awards, as an appeal effectively defeats the purpose behind compulsory arbitration." *Poulson v. Ofack,* 220 Ariz. 294, 297, ¶ 9, 205 P.3d 1141, 1144 (App.2009) (internal quotation marks omitted) (citation omitted). Here, Fisher's demand for trial de novo caused the parties to re-litigate fault and specifically the fault allocation between Fisher and Edgerton. Fisher's appeal and attempt to shift fault to Edgerton were unsuccessful and represent the type of appeal Rule 77(f) was designed to discourage. *See id.*

### III. Constitutional Claims [7]

#### A. Fair Notice and Due Process

■ ¶ 18 Fisher argues that awards under Rule 77 "are not subject to any constitutional limit" and violate due process because "neither [Rule 77(f) ] nor the case law gave [her] 'fair notice' of the extent of her punishment if she did not do at least 23% better against [Edgerton] as well as against [P]laintiff." Although Fisher did not present this argument to the superior court, and we normally consider unpreserved arguments waived, *McDowell Mountain Ranch,* 190 Ariz. at 5, 945 P.2d at 316, given the constitutional issues involved, we exercise our discretion to address the issue on the merits, *see State v. Smith,* 203 Ariz. 75, 79, ¶ 12, 50 P.3d 825, 829 (2002).

¶ 19 Fisher's argument fails. First, Rule 77(f) clearly states an unsuccessful appellant will pay an appellee's reasonable fees and costs. Fisher had fair notice that Edgerton, as a non-appealing party to the arbitration, was an appellee at the trial de novo, and as

---

**7.** We consider Fisher's state and federal constitutional challenges together because the respective due process and equal protection clauses protect the same interests. *See Vong v. Aune,* 235 Ariz. 116, 120, ¶ 21, 328 P.3d 1057, 1061 (App.2014).

Although Fisher does not cite any specific Arizona constitutional provisions for due process or equal protection, we assume she means to refer to Article 2, Sections 4 and 13, of the Arizona Constitution.

the appellant at the trial de novo, if Fisher was unsuccessful against appellee Edgerton, she would be liable for Edgerton's reasonable costs and fees.

¶ 20 Nor can we accept Fisher's analogy to punitive damages cases discussing a due process right to fair notice. Unlike punitive damages, the Rule and corresponding statute notify parties that an unsuccessful appellant at a trial de novo will be liable for an appellee's *reasonable* costs and fees. Ariz. R. Civ. P. 77(f)(2), (3); A.R.S. § 12–133(I)(2), (3); *Poulson,* 220 Ariz. at 298, ¶ 14, 205 P.3d at 1145 (stating that in awarding attorneys' fees under Rule 77, the superior court has discretion to determine whether the economic hardship exception should apply and whether the fees requested are reasonable). Courts regularly calculate and award expert witness and attorneys' fees and costs in a variety of cases and are uniquely positioned to determine the reasonableness of such expenses. *See generally Schritter v. State Farm Mut. Auto. Ins. Co.,* 201 Ariz. 391, 392, ¶ 5, 36 P.3d 739, 740 (2001) (expert witness fees and costs); *Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 186–88, 673 P.2d 927, 930–32 (App.1983) (explaining how to determine reasonable attorneys' fees based on billing rates, hours expended, success of claims); *see also, e.g.,* A.R.S. §§ 42–18206 (Supp.2013) (mandating "reasonable attorney fees to be determined by the court"), 12–1135(B), (C) (Supp. 2013) (stating property owner "shall be awarded reasonable attorney fees"), 44–1265(B) (2013) ("[T]he court shall award the [prevailing] consumer reasonable costs and attorney fees."), 12–1364 (2003) ("[T]he court shall award the successful party reasonable attorney fees ...."), 41–1491.36 (2011) (stating court "shall award reasonable attorney fees" to prevailing plaintiff), 17–605 (2006) (stating court "shall award" prevailing party reasonable fees), 44–1799.06 (2013) (stating prevailing party "shall be awarded reasonable attorney fees"), 32–1391.18 (2008) (stating court "shall award" prevailing plaintiff "reasonable attorney fees, as determined by the court"), 32–2198.11 (2012) (stating reasonable fees shall be awarded to prevailing party), 44–1733 (2013) (stating court shall require unsuccessful defendant to pay plaintiff reasonable attorneys' fees).

¶ 21 Moreover, as discussed in a companion opinion issued this same date, *Granville v. Howard,* 1 CA–CV 13–0370, 236 Ariz. 29, 335 P.3d 551, 2014 WL 4854162 (Ariz.App. Sept. 30, 2014), we provide a non-exclusive list of factors that trial courts should consider in determining a reasonable fee award under Rule 77(f). *See also Associated Indemn. Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (listing factors); *Schweiger,* 138 Ariz. at 187, 673 P.2d at 931 (listing factors).

¶ 22 Thus, the concerns stemming from the "imprecise manner in which punitive damages systems are administered," *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 417, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), are not present in the context of Rule 77 fee awards because a court, rather than a jury, will determine the amount of the award and must follow guidelines in determining reasonableness. As the Supreme Court has stated, concern over jury awards of punitive damages is based on the broad discretion given juries to award punitive damages, which discretion seemingly has no limit and can be based on evidence having little bearing on the amount of punitive damages to be awarded:

> [P]unitive damages pose an acute danger of arbitrary deprivation of property. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.... Our concerns are heightened when the decisionmaker is presented ... with evidence that has little bearing as to the amount of punitive damages that should be awarded.

*State Farm Mut. Auto. Ins. Co,* 538 U.S. at 417, 123 S.Ct. 1513 (internal quotation marks omitted) (citation omitted). This concern is simply not present when a court awards attorneys' fees applying factors designed to limit the award to a reasonable amount.

¶ 23 Finally, the constitutional underpinnings for limiting punitive damage awards do not exist in the context of Rule 77

fee awards. Punitive damages "are aimed at deterrence and retribution," *id.* at 416, 123 S.Ct. 1513, and "serve the same purposes as criminal penalties," *id.* at 417, 123 S.Ct. 1513. Due process protections prohibit "the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* at 416, 123 S.Ct. 1513. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Unlike punitive damages, Rule 77(f) fee awards are not penalties intended to punish litigants, but to discourage litigants from appealing reasonable arbitration awards. *See Tallsalt,* 192 Ariz. at 130, ¶ 8, 962 P.2d at 204 (discussing predecessor rule).

¶ 24 In litigating the case, Fisher had knowledge of the existence of Rule 77(f) and some sense of how much the defense might cost and, to the extent Edgerton's fees might have been out of line with that cost, Fisher was entitled to argue the fees should be denied or limited to a reasonable amount. Fisher does not contend the award of fees and costs here was unreasonable or that the costs and fees were unrelated to Edgerton's expenses in rebutting Fisher's attempts to shift liability to Edgerton. This is unlike punitive damage awards which, absent constitutional protections, are not subject to any limits and left to the jury's discretion. It was that unlimited discretion which triggered due process concerns of arbitrary deprivations of property and necessitated imposition of constitutional limits. *State Farm Mut. Auto. Ins. Co.,* 538 U.S. at 416–18, 123 S.Ct. 1513.

**B. Equal Protection and Right to Trial de Novo**

¶ 25 In the superior court, Fisher argued a Rule 77(f) award against her in favor of Edgerton would "place a chilling effect" upon her right to a jury trial and "would amount to a sanction which would effectively prohibit [Fisher] from obtaining a trial by jury." On appeal she maintains both that Rule 77 fee awards violate equal protection on a rational basis theory and that they should be subject to higher scrutiny because they chill her fundamental right to a jury trial. As we understand her latter argument, it is that "[i]f sanctions in favor of every other party involved in the lawsuit are a realistic possibility, it would have a chilling, if not freezing, effect on any litigant's right to a trial to a jury on the merits." Although Fisher did not preserve the first of her appellate arguments below, given the constitutional issue at stake, we address the merits of that issue and conclude her arguments fail on the merits.

¶ 26 Fisher's argument is that because the damage amount in this case was less than $50,000, she was treated differently than parties where the claim is greater than $50,000 and thus not subject to mandatory arbitration. We disagree. "To establish an equal protection violation, a party must . . . . show that it was treated differently than other people in the same 'similarly situated' class." *Aegis of Ariz., L.L.C. v. Town of Marana,* 206 Ariz. 557, 570, ¶ 54, 81 P.3d 1016, 1029 (App.2003); *see also State v. Nguyen,* 185 Ariz. 151, 153, 912 P.2d 1380, 1382 (App.1996) ("The equal protection clauses of the state and federal constitutions have the same effect and generally require that all persons subject to state legislation shall be treated alike under similar circumstances." (citation omitted)). That those defendants who cause injuries greater than $50,000 are not subject to compulsory arbitration does not establish that Fisher is being treated differently from others in her class of defendants that may be liable for "relatively minor injuries" (less than $50,000). In other words, Fisher's constitutional claim hinges on her assertion of being treated differently than a class of people to which she does not belong, and she has failed to establish even a prima facie showing of unequal treatment. *See Nguyen,* 185 Ariz. at 154–55, 912 P.2d at 1383–84 (stating that appellant's argument was hypothetical and did not show any actual unequal treatment in how law was applied).

¶ 27 In any event, putting aside that Fisher would have to show the Rule and statute are facially unconstitutional under all circum-

stances, *Hernandez*, 216 Ariz. at 472, ¶ 8, 167 P.3d at 1267, the fee award provisions arising from mandatory arbitration are rationally related to a legitimate state goal of reducing the high cost of litigation and encouraging alternative dispute resolution, *Valler*, 190 Ariz. at 395 n. 7, 949 P.2d at 55 n. 7 ("Arizona law and public policy favor arbitration.") (citing *Foy v. Thorp*, 186 Ariz. 151, 153, 920 P.2d 31, 33 (App.1996)). More specifically, there is a rational basis for limiting mandatory arbitration to cases of less than a certain monetary value. First, following arbitration the parties should have at least a rudimentary understanding of the value of their case. As a result, parties may decide not to pursue an appeal from arbitration if the damages sought or awarded are sufficiently low as to make a formal trial not cost-effective. By contrast, it would remain cost-effective to appeal arbitration awards involving substantially greater damages, even while recognizing that an appeal might result in a Rule 77(f) fee award.

¶ 28 Discouraging appeals of reasonable arbitration awards in relatively low dollar cases is a legitimate governmental interest. Although Rule 77(f)'s "fit" may be imperfect, it is nevertheless rationally related to achieving a legitimate governmental goal. *See Heller v. Doe*, 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (under rational basis review, courts must accept legislative "generalizations even when there is an imperfect fit between means and ends"). "Even if the classification results in some inequality, it is not unconstitutional if it rests on some reasonable basis." *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 351, 842 P.2d 1355, 1364 (App.1992). A legislative body "may hit at an abuse which it has found, even though it has failed to strike at another." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 151, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *see also Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 556, 637 P.2d 1053, 1059 (1981) ("[T]he law need not be in every respect logically consistent with its aims to be constitutional." (citation omitted)).

¶ 29 We find support for our conclusion in *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 880 P.2d 169 (1994). In *Richardson*, the Hawai'i Supreme Court upheld a similar mandatory arbitration provision, rejecting an equal protection challenge based on the size of the claimed damages. 880 P.2d at 190–92. As the court explained, "classifications based on monetary amounts are not 'suspect,'" and applying the rational basis test involves the presumption that every enactment of the legislature is constitutional, subject to a party's rebutting the presumption beyond a reasonable doubt. *Id.* at 191. Applying that test, the court concluded that resolution of certain tort actions through arbitration is a legitimate state goal and the legislature could reasonably believe that actions exceeding the statutory limit would "generally require arbitration proceedings of greater length than those [under the limit] ... and that 'the cost of a subsequent trial ... [is] very small, relative to the claim itself.'" *Id.* (quoting *Kimbrough v. Holiday Inn*, 478 F.Supp. 566, 576 (E.D.Pa.1979)).

¶ 30 Similarly, in *Kimbrough v. Holiday Inn*, the federal district court determined a pilot program requiring compulsory arbitration for claims for damages under $50,000 did not violate the Seventh Amendment to the United States Constitution, 478 F.Supp. at 567, 571, and did not violate equal protection, *id.* at 575–77. In *Firelock Inc. v. Dist. Ct.*, the Colorado Supreme Court considered whether compulsory arbitration for actions involving monetary damages less than $50,000 violated the right to trial by jury and equal protection and concluded it did not violate either. 776 P.2d 1090, 1097, 1099 (Colo.1989). The court determined that Colorado's law providing for the payment of arbitration costs if the party seeking trial de novo did not improve that party's position by 10% did not unreasonably burden the availability of a jury trial. *Id.* at 1096–97. The court also determined that it was not unreasonable to subject damage claims under the threshold amount to arbitration and such a distinction was rationally related to legitimate government interests served by arbitration. *Id.* at 1098–99.

¶ 31 We apply a similar presumption to the constitutionality of state law and require the plaintiff to rebut that presumption beyond a

reasonable doubt. *Niehaus*, 233 Ariz. at 197, ¶ 5, 310 P.3d at 985. Here, just as in *Richardson* and *Kimbrough*, the setting of a monetary limit to compulsory arbitration is rationally related to a legitimate state goal of reducing the costs of unnecessary litigation and is therefore constitutional.

¶ 32 Fisher also argues the prospect of having to pay an opposing party's attorneys' fees would chill her fundamental right to a jury trial because she would fear being held liable for such fees. We disagree. First, although Fisher argues that the fee award provision violates the right to a jury trial as guaranteed in the Seventh Amendment to the United States Constitution and Article 2, Section 23, of the Arizona Constitution, the Seventh Amendment right to a jury trial does not apply to the states. *See McDonald v. City of Chicago*, 561 U.S. 742, 757 n. 13, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (noting the Seventh Amendment to the United States Constitution remains unincorporated); *Colgrove v. Battin*, 413 U.S. 149, 169 n. 4, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (stating "the Seventh Amendment is one of the few remaining provisions in the Bill of Rights which has not been held to be applicable to the States"); *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 486 n. 5, 724 P.2d 562, 572 n. 5 (1986); *see also* Ariz. Const. art. 6, § 17. However, both Article 2, Section 23, and Article 6, Section 17, of the Arizona Constitution provide in pertinent part that the right to a jury trial "shall remain inviolate," and apply to the damage claims here because they existed at common law at the time of statehood. *See Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 416, ¶ 43, 132 P.3d 1187, 1196 (2006) (confirming constitutional provisions do not create right to jury trial but preserve jury trial right existing at common law at time of statehood); *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App. 2004) (holding contract action claim for damages subject to jury trial right and citing *Perkins v. Komarnyckyj*, 172 Ariz. 115, 118, 834 P.2d 1260, 1263 (1992), which held that parties in malpractice action have right to have every issue tried by jury that has been empaneled); *see also Mozes v. Daru*, 4 Ariz. App. 385, 391, 420 P.2d 957, 963 (1966) (hold-

ing parties had right to have jury decide liability and damages on counterclaim in tort action).

¶ 33 Nonetheless we interpret Arizona's constitutional provisions protecting the right to a jury trial consistent with the Seventh Amendment. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (holding federal standards for summary judgment to protect right to a jury trial under Seventh Amendment to the United States Constitution apply equally to Arizona constitutional provisions protecting right to jury trial); *Dombey*, 150 Ariz. at 486 n. 5, 724 P.2d at 572 n. 5 (applying similar approach to Seventh Amendment right to jury trial to Arizona constitutional jury right provisions).

¶ 34 Although the right to a jury trial is constitutionally protected, it is also subject to reasonable regulation. Under Arizona law, the state has the power to set reasonable prerequisites to exercise the right to a jury trial, provided the right is not eliminated. *See Graf v. Whitaker*, 192 Ariz. 403, 407, ¶ 15, 966 P.2d 1007, 1011 (1998) (rule providing that a party waives its right to a trial de novo from court-ordered arbitration for failure to participate in the arbitration proceeding does not violate the right to a jury trial, but merely regulates such right by setting prerequisites for its exercise); *see also Governale v. Lieberman*, 226 Ariz. 443, 450, ¶¶ 22–23, 250 P.3d 220, 227 (App.2011) (holding statute requiring plaintiff in medical malpractice action to provide expert in same field as the defendant does not violate constitutional right to a jury trial because it merely regulates causes of action and does not eliminate a right to have a claim fully and finally determined by a jury). In other words, the legislature is free to regulate the right to a jury trial provided such regulation does not establish an unreasonable deterrent to a jury trial. *Governale*, 226 Ariz. at 450, ¶¶ 22–23, 250 P.3d at 227.

¶ 35 With that, we conclude that the possibility of fee awards on appeal from an arbitration award does not violate the constitutional right to a jury trial. Our conclusion is supported by *Richardson*, 880 P.2d at 188–90, and *Christie–Lambert Van &*

*Storage Co. v. McLeod,* 39 Wash.App. 298, 693 P.2d 161 (1984). In *Richardson,* the Hawai'i Supreme Court upheld a similar fee award provision against a litigant who was not able to improve the results of an arbitration award by 15% through a jury trial de novo. 880 P.2d at 184, 190. As the court explained, the state right to a jury trial, like the Seventh Amendment, has never been construed to prohibit reasonable conditions upon its exercise. *Id.* at 188. Rather, the government may regulate such right provided that the ultimate determination of issues of fact by the jury not be interfered with by onerous conditions that would make the right practically unavailable. *Id.* (quoting *Kimbrough,* 478 F.Supp. at 570); *accord Ex Parte Peterson,* 253 U.S. 300, 309–10, 40 S.Ct. 543, 64 L.Ed. 919 (1920). "[T]he right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable." *Richardson,* 880 P.2d at 188 (quoting *Kimbrough,* 478 F.Supp. at 570). As long as laws affecting the right to trial by jury do not significantly burden or impair the right to ultimately have a jury determine the issues of fact, such regulations are constitutional. *Id.* Similarly, in *Christie–Lambert,* the court determined that the assessment of attorneys' fees against a party who seeks a trial de novo but does not improve its position at trial, was not a violation of the right to a jury trial. 693 P.2d at 165, 168; *see also supra* ¶ 30 (discussing *Kimbrough* and *Firelock* ).

¶ 36 The possibility of a fee award here does not act as an unreasonable or significant burden impairing the right to a jury trial. Rule 77 and A.R.S. § 12–133(1) both provide safeguards to ensure that the right to have a jury decide ultimate issues is not significantly burdened or impaired. The superior court is limited to awarding *reasonable* attorneys' fees and expert fees, and may decline to award such fees if it would create a significant economic hardship on the appellant. As addressed above, and in *Granville v. Howard,* 1 CA–CV 13–0370, 236 Ariz. 29, 335 P.3d 551 (Ariz.App. Sept. 30, 2014), the court

should apply a number of factors in deciding a reasonable amount of the fee award.

¶ 37 Fisher contends, however, that if she "had any idea that she would do $10,000 better against the plaintiff but be ordered to pay $15,000 in sanctions to [Edgerton], she never would have appealed." As discussed above, the rule and statute gave fair notice that Fisher could be required to pay Edgerton's reasonable costs and fees if Fisher was not sufficiently successful in shifting liability to Edgerton, and this is precisely the type of cost-benefit analysis Rule 77(f) demands before a litigant decides to appeal an arbitration award. *See Poulson,* 220 Ariz. at 297, ¶ 9, 205 P.3d at 1144 (stating intent of fee award to discourage marginal appeals so as to not defeat purpose of compulsory arbitration). Moreover, her contention that had she known she would have incurred $5000 more in expenses she would have not appealed, belies her hypothetical contention that "small value claims like this one in multiple party cases would *never* go to trial because the appealing party could never make an informed and well-reasoned decision whether he or she could do at least 23% better against *every* other party, whether plaintiff or defendant." Even assuming that such claims would never be appealed because of the risk of incurring expenses in excess of even the most valuable compulsory arbitration claim ($49,999) does not mean that the right to a jury trial de novo is effectively denied. That there is a cost involved in exercising the right does not deny the right. There is always a cost to litigation that a party must weigh to decide whether to bring a particular claim or settle a particular claim. Moreover, a party entitled to an award of fees under Rule 77(f) has the right to believe that low dollar arbitration cases, reasonably decided, should not be going forward to trial.

¶ 38 We recognize that in upholding Hawai'i's arbitration appeal fee award provision, the Hawai'i Supreme Court noted the award was limited to $5000, *Richardson,* 880 P.2d at 189–90, whereas A.R.S. § 12–133 and Rule 77 have no cap, *per se.* However, as we discussed above, and in *Granville v. Howard,* 1 CA–CV 13–0370, 236 Ariz. 29, 335 P.3d 551 (Ariz.App. Sept. 30, 2014), the court is re-

quired to limit the amount of fees to what is reasonable, the same test which applies to awards under A.R.S. § 12–341.01(A) (Supp. 2013). That limitation ensures the party appealing from an arbitration award who does not do at least 23% better against an appellee, will not be facing a significant and onerous award which might otherwise deter the right to pursue a jury trial. This is especially true because in determining what award is reasonable, if any, the court will take into account whether the award would create an undue hardship for that appellant. Fisher does not claim such a hardship based on the fee award in this case.

## IV. Attorneys' Fees and Costs on Appeal

¶ 39 Edgerton requests her attorneys' fees pursuant to Rule 77(f). *See also* A.R.S. § 12–133(1). Fisher argues that Rule 77(f) is inapplicable in this Court. We agree for the reasons stated in *Granville,* 1 CA–CV 13–0370, 236 Ariz. 29, 335 P.3d 551 (Ariz.App. Sept. 30, 2014), and *Jarostchuk v. Aricol Commc'ns, Inc.,* 189 Ariz. 346, 350, 942 P.2d 1178, 1182 (App.1997). Thus, we deny Edgerton's request for fees on this basis.

¶ 40 However, because Edgerton is the prevailing party on appeal she is entitled to her costs pursuant to A.R.S. § 12–341 (2003) upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 41 For the reasons stated, we affirm the superior court's award of Rule 77(f) fees and costs to Edgerton.