54 P.3d 828

Barbara C. COLLETTE and Scott E. Mac-Farland, wife and husband; Holly L. Scofield, a single woman, Plaintiffs–Appellants,

v.

TOLLESON UNIFIED SCHOOL DIS-TRICT, NO. 214; Stephen Knight and Joyce Lee Knight, husband and wife; Kino Flores and Anna Flores, Defendants–Appellees.

No. 1 CA–CV 01–0490.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 12, 2002.

---

Shughart Thomson Kilroy Goodwin Raup, P.C. By Brian M. Goodwin, Rudolph J. Gerber, Lori V. Berke, Phoenix, Attorneys for Appellants Collette and MacFarland.

Herzog and O'Connor, P.C. By Mark O'Connor, Jody Buzicky, Scottsdale, Attorneys for Appellant Scofield.

Sanders & Parks, P.C. By Steven D. Leach, J. Steven Sparks, Michele L. Forney, Phoenix, Attorneys for Defendant–Appellees.

## OPINION

RAYES, Judge Pro Tempore.[*]

¶ 1 This appeal stems from three consolidated actions. Barbara Collette and Scott MacFarland, wife and husband, and Holly L. Scofield ("appellants") appeal from the trial court's grant of summary judgment to defendants-appellees Tolleson Unified School District No. 214, Stephen Knight, and Kino Flores (collectively "the District").[1] For the reasons that follow, we affirm.

[*] The Honorable Douglas L. Rayes, Judge Pro Tempore of the Court of Appeals, Division One, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Arizona Constitution, Article 6, Section 31 and A.R.S. §§ 12–145 through 12–147 (1992 and Supp.2001).

## STANDARD OF REVIEW

¶ 2 Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). Our review of summary judgment is de novo. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997). In conducting our review, we view the facts in the light most favorable to the party against whom summary judgment was entered. *Id.* at 124, 938 P.2d at 1125.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 Appellants were injured in an automobile accident on November 19, 1998, at approximately 12:10 p.m., when the car Scofield was driving was struck by a car operated by Zachary Thomason, a student at Westview High School. Four other students were passengers in Thomason's car. The students were returning to school from Desert Sky Mall, about five miles away, where they had driven during their school lunch break. The scheduled lunch period for these students began at 11:20 a.m. and ended fifty minutes later at 12:10 p.m.

¶ 4 Westview had a modified closed-campus policy. That is, students were not to leave campus during the day without checking out and, in order to check out, needed specific parental permission. Students who violated the policy were subject to disciplinary action. Freshmen were not permitted to leave during school hours, including lunch; sophomores, juniors, and seniors with at least a 3.0 grade point average and their parents' permission were permitted to leave campus at lunch. An identification card or "lunch pass" was required to be presented by the students upon leaving and re-entering campus. The policy was intended to reward

1. Stephen Knight was the principal of Westview High School, a school within the District, and Kino Flores was the superintendent of the District.

students for academic achievement and good behavior.

¶ 5 Thomason did not have a lunch pass and neither did two other members of the group. After the students decided to drive to the mall for lunch, Thomason went to get his car, which was parked off campus. He proceeded to a campus entrance where a security guard was stationed. When the guard asked Thomason for his pass, he admitted he did not have one. As Thomason continued to walk on, the guard told him he could not leave. Thomason told the guard he needed some books from his car for his next class. The guard again told him he could not leave campus, and Thomason replied, "Well, I need the books, so, basically, I'm going off." The guard made no further attempt to stop Thomason, but did admonish him to come back quickly. The other members of the group left campus through an unguarded gate and joined Thomason, who drove to the mall.

¶ 6 The students ate lunch at the mall food court and then began the trip back to campus. The students gave conflicting testimony as to whether they were in a hurry to get back to class on time. Because we must view the record most favorably to appellants, we accept as true that Thomason was in a hurry. The accident happened while Thomason was driving westbound on Thomas Road when he pulled into the eastbound lane to pass other westbound vehicles. As he attempted to return to his lane of travel, he lost control of his vehicle, which then collided with Scofield's eastbound car. The investigating officer estimated Thomason's speed prior to impact was approximately seventy-two miles per hour.

¶ 7 The District sought summary judgment, alleging a lack of duty to appellants, and the trial court agreed. Appellants timely appealed.

## DISCUSSION

¶ 8 Appellants contend the trial court erred by granting summary judgment, and raise two arguments on appeal. First, they claim that the District, by virtue of its modified closed-campus policy, had a duty to protect the general public from the negligent driving of students who left campus. Second, they argue that the District created an unreasonable risk of harm to the motoring public by placing rigid time constraints on student lunch breaks. We first consider the duty issue.

### Determining the Existence of a Duty

¶ 9 A negligence action may not be maintained in the absence of a duty recognized by law, and the existence of a duty is a question of law for the court. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). "Duty" is a concept that arises from the recognition that relations between individuals may impose upon one person a legal obligation for the benefit of another. *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983). It is an expression of the sum total of those policy considerations that lead the law to grant protection to a particular plaintiff from a particular defendant. *Id.* Courts will find a duty, in general, if reasonable persons would recognize it and agree that it exists. *Id.*

¶ 10 The relationship between individuals that results in a legal obligation is usually a direct one between the plaintiff and defendant. *Id.* In this case, appellants do not contend that they had any direct relationship with the District. They maintain, however, that the parties need not be connected or know each other for a duty to arise, citing *Rudolph v. Arizona B.A.S.S. Federation*, 182 Ariz. 622, 898 P.2d 1000 (App.1995).

¶ 11 This argument misconstrues *Rudolph*. Admittedly, there is no requirement that a foreseeable plaintiff be personally known to the defendant for a duty to exist. *Id.* at 624, 898 P.2d at 1002. For example, when one motorist negligently injures another on a public highway, liability is obviously not dependent upon whether they know each other. *Id.* at 625, 898 P.2d at 1003. Their relationship begins with their joint status as motorists, which places them within the foreseeable risk of negligent driving by other motorists. The general duty of reasonable care arises from this relationship and becomes fixed when it is breached and causes damage. The result is a direct relationship

between tortfeasor and injured victim. *Id.* *Rudolph* applied these concepts to find that the organizer of a fishing tournament had a duty to exercise reasonable care in designing and conducting the tournament so as not to injure other users of the lake. *Id.*

¶ 12 In this case, the District did not directly injure appellants; they were injured by Thomason, one of the District's students. We therefore must determine whether to recognize a legal relationship between appellants and the District that gives rise to a duty. Appellants contend that the District's special relationship with Thomason imposed a duty upon the District to control Thomason's conduct so as to prevent injury to them under the circumstances of this case.

¶ 13 There is no common law duty to control the conduct of a third person so as to prevent harm from befalling another. Restatement (Second) of Torts ("Restatement") § 314 (1965); *Davis v. Mangelsdorf,* 138 Ariz. 207, 208, 673 P.2d 951, 952 (App.1983). Knowledge of a risk of harm and the ability to take some action to ameliorate that risk do not alone impose a duty to act. Restatement § 314; *see also Markowitz,* 146 Ariz. at 356, 706 P.2d at 368 (no consequences for negligence even in light of foreseeable risk if there is no duty).

¶ 14 Section 315 of the Restatement provides an exception to the general rule of non-liability when "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." Restatement § 315 (1965); *Cooke v. Berlin,* 153 Ariz. 220, 224, 735 P.2d 830, 834 (App.1987), *disapproved on*

other grounds by *Dunn v. Carruth,* 162 Ariz. 478, 481, 784 P.2d 684, 687 (1989).

¶ 15 Appellants do not argue that they had a special relationship with the District that gave them a right to the District's protection. Rather, their claim is predicated upon section 315(a) of the Restatement—the special relationship between the District and its *students.* Appellants ask us to find that relationship as one which imposed a duty upon the District to control Thomason and prevent him from harming them.[2] Appellants argue, and we agree, that a school district has a statutory and common law duty to its students.[3] While the standard of care that must be met to fulfill that duty has been the subject of several Arizona cases, no reported Arizona case has yet considered the question raised here.

¶ 16 The only conduct of the District at issue here is the alleged negligent enforcement of its modified closed-campus policy. Nothing happened to Thomason while at school that affected his ability to drive a car. Nor was Thomason's driving part of any school activity. *Cf. Bishop v. State Dep't of Corrections,* 172 Ariz. 472, 476, 837 P.2d 1207, 1211 (App.1992) (because school recruited students for youth conference, it thereby assumed a duty of care to them). The car Thomason was driving had not been provided to him by the District and the District had no reason to believe Thomason was an incompetent or dangerous driver. Thomason was driving on a public street with a valid driver's license for a personal purpose.

¶ 17 Plainly, the District had no power to control Thomason's actual operation of his vehicle. Appellants are really arguing that the District's duty to supervise its students

---

**2.** Appellants cite *Grimm v. Arizona Board of Pardons & Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977), for the proposition that a custodian must take affirmative measures to avoid increasing danger to third persons from the known conduct of persons under the custodian's control. *Grimm,* however, applied Restatement § 319 (1965) governing the duty of "those in charge of persons having dangerous propensities," that is, individuals likely to cause bodily harm to others if not controlled. *Id.* at 267, 564 P.2d at 1234. There is no evidence that Thomason had any dangerous propensities or that the District knew or should have known that he was likely to cause bodily harm if not controlled.

**3.** Arizona Revised Statutes ("A.R.S.") § 15–341(A)(13), (14), and (17) (Supp.2001) requires the governing board of the school district to hold students to strict account for disorderly conduct on school property; discipline students for disorderly conduct on the way to and from school; and provide for adequate supervision over pupils in instructional and noninstructional activities. The duty of ordinary care owed by a school district and teacher to students while under their charge is recognized in *Chavez v. Tolleson Elementary,* 122 Ariz. 472, 475, 595 P.2d 1017, 1020 (App.1979).

gave rise to a duty to appellants to keep Thomason from driving his car at the particular time this accident happened. We do not believe reasonable persons would agree that such a duty exists, and decline to impose such a duty in this case for both practical and policy reasons.

¶ 18 As a practical matter, we see no benefit in imposing a duty upon a school district concerning the conduct of students over which it has no control. The District has no power or authority to decide which students are authorized to operate motor vehicles on public highways. Nor does it have the power to prevent, revoke, or restrict a student's off-campus driving privileges, or even to prevent a student from choosing to drive without a license. The most the District can do is to impose discipline upon a student for the violation of school rules involving motor vehicles in and around campus or prohibit a student from driving a motor vehicle onto the school campus.

¶ 19 The ability to impose discipline after the fact is significantly different from the power to control a student's conduct before the fact.[4] Once a student removes himself from school grounds, with or without permission, his decision to drive is outside the supervisory power of school officials. This court has recognized, in another context involving the control of the conduct of a minor, the futility of imposing a duty when there is no concomitant power to discharge it. *Pfaff By and Through Stalcup v. Ilstrup*, 155 Ariz. 373, 373–74, 746 P.2d 1303, 1303–04 (App. 1987) (recognizing that a non-custodial parent living 120 miles away lacked power to control his child).

¶ 20 Moreover, appellants' argument proposes an unreasonable duty on schools with potentially broad ramifications. The duty of control that appellants seek to impose here— to prevent student driving at any time that a student is supposed to be in school—could, if recognized, encompass an even broader range of potential student conduct. School districts might thereby be called upon to defend their student supervision policies and actions in a variety of other contexts and settings, and all other aspects of a school's schedule could be subject to challenge. We do not believe a school district should be under a duty to anticipate and protect against such eventualities.

¶ 21 The Arizona cases relied upon by appellants that address the liability of schools and school districts are inapposite because they are based upon the undisputed duty of care or supervision owed to a student. This court has twice held, in automobile accident cases, that a school or school district does not, as a matter of law, breach the duty of student supervision by failing to have, or to enforce, a closed campus policy. *Rogers By and Through Standley v. Retrum*, 170 Ariz. 399, 403, 825 P.2d 20, 24 (App.1991); *Tollenaar v. Chino Valley Sch. Dist.*, 190 Ariz. 179, 180, 945 P.2d 1310, 1311 (App. 1997). The basis for these decisions was that the students were not exposed to an unreasonable, or increased, risk of harm simply by driving during school hours as opposed to non-school hours.

¶ 22 Appellants' analogy to *Rudolph* is also misplaced. In that case, the organizer of a fishing tournament, as a user of the lake, was held to have a duty to design the tournament and make rules for the conduct of its members so as to avoid increasing the risk of harm to all other users of the lake. Here, the District was not a user of the highway. Thomason was not involved in any school activity in which the District made rules for use of the public highway which would affect other motorists such as appellants. Thomason's driving was governed by the general laws regulating the operation of a motor vehicle, which were in turn unaffected by any school rule.

¶ 23 Reported cases from other jurisdictions that have considered similar arguments for the imposition of a duty upon a school district for the negligence of a student driver have declined to find such a duty. In the first of these, *Thompson v. Ange*, 83 A.D.2d

---

4. For example, school officials are not authorized to physically restrain a high school student to prevent that student from leaving campus. A.R.S. § 15–843(b)(3) (Supp.2001) (physical force by certificated or classified school personnel is permitted only in self-defense, defense of others, and defense of property).

193, 443 N.Y.S.2d 918, 920 (1981), the court refused to impose liability upon school authorities for the negligence of a licensed student driver while driving his own car on a public road. The student was traveling from his high school to a vocational training center, during school hours and in violation of school rules. *Id.* In finding no duty, the court noted that the violation of school rules did not increase the risk of an accident; indeed, the risk existed regardless of any school rule: "With or without rules, neither [the school board nor the district] has any duty to members of the driving public to keep their student ... off the public highways with his automobile during school hours." *Id.* at 921.

¶ 24 The Indiana Court of Appeals followed *Ange* in *Wickey v. Sparks*, 642 N.E.2d 262 (Ind.Ct.App.1994). *Wickey* also involved an automobile accident caused by a high school student. *Id.* at 264. After completing morning vocational classes, students were allowed to drive to the high school for afternoon classes if they had parental permission and a valid driver's license. *Id.* The student handbook required safe driving and compliance with all traffic laws. Students were required to return to school by a certain time and were instructed to use a route that was deemed "safer" by school officials. *Id.* at 264–65.

¶ 25 Finding no duty to the motorist injured by the student's driving, the Indiana court balanced three factors: the relationship of the parties, the reasonable foreseeability of harm, and public policy. *Id.* at 266–68. First, the court found no legal relationship between school authorities and the general public. *Id.* at 266. Second, there was no evidence that a student driving during school hours created the foreseeability of increased harm to the public any more than if that student, or any other licensed driver for that matter, had been driving on the public highway at any other time for any other reason.

*Id.* at 267. Finally, as a matter of public policy, the court did not believe that schools should be insurers of their students' conduct or be liable for students' negligent acts away from school. *Id.*

¶ 26 The California Supreme Court reached a similar result in *Hoff v. Vacaville Unified School District*, 19 Cal.4th 925, 80 Cal.Rptr.2d 811, 968 P.2d 522, 525 (1998), in which a pedestrian was struck by a student motorist when the student, who was exiting a high school parking lot, jumped the curb with his car. The pedestrian sued the school district and advanced the same argument as appellants, that the special relationship between the school district and the student imposed upon the district a duty to exercise reasonable care to control the student so as to protect all persons who were foreseeably endangered by his conduct. *Id.* 80 Cal. Rptr.2d 811, 968 P.2d at 527.

¶ 27 The California Supreme Court rejected the existence of such a broad duty, finding that the district's duty to supervise students did not run to the off-campus, non-student, pedestrian. *Id.* 80 Cal.Rptr.2d 811, 968 P.2d at 528–29. The court held that the relationship of the district to its student was analogous to that of a parent to a child. Thus, any duty school employees owed to off-campus students could not be greater than the duty the students' parents would owe to those same individuals, and there could be no liability when school personnel neither knew, nor reasonably should know, that a particular student had a tendency to drive recklessly. *Id.*[5]

¶ 28 The most recent court to consider this issue was *Gylten v. Swalboski*, 246 F.3d 1139 (8th Cir.2001) (applying Minnesota law). In *Gylten*, the student, a licensed driver, had been asked to drive himself and another member of the football team to practice at another school because the usual school bus transportation was not available. *Id.* at 1141. The student driver had an accident en route,

---

**5.** One justice specially concurred in the result to make clear that he would have ended the court's analysis with the determination that the school district's duty could not exceed a parent's duty. He would not have taken the additional step of establishing an analogy to the parent-child relationship because doing so might impose unwar-

ranted liability in cases where district employees knew or should have known of a child's tendencies to behavior that might injure a non-student in these same circumstances. *Id.* For the same reasons of caution, we also decline to establish that analogy as law in this case.

and the injured motorist sued the school district. In affirming the district court's finding that no duty existed, the appeals court cited with approval the *Ange, Wickey,* and *Hoff* cases. *Id.* at 1143–44. As in those cases, the court found no special relationship between the district and the non-student plaintiff. There was no evidence the district knew or should have known that the student was anything but an average licensed driver with parental permission to drive to school. There was no evidence that he had a history of careless driving, and the district did not provide the vehicle. *Id.* at 1144.

¶ 29 In each of these four cases, the nexus between student driving and a school activity or educational function was even stronger than it is in this case. The no-duty decisions of these courts reflect the unwillingness as a matter of policy to extend a school district's responsibility to persons in the position of appellants. We agree with these decisions for the reasons discussed above, and we also find, as in *Ange,* that imposing a duty here would extend the legal consequences "beyond a controllable degree." 443 N.Y.S.2d at 921. *Accord Rodriguez v. Besser Co.,* 115 Ariz. 454, 460, 565 P.2d 1315, 1321 (App.1977) (recognizing that a determination as to duty involves a multitude of policy considerations and a finding of no duty means the burden of holding otherwise is too great).[6]

¶ 30 We also base our decision upon another requirement for the imposition of a duty that we find lacking here and that is a finding that Thomason posed an "unreasonable" risk of harm. *See Alhambra Sch. Dist. v. Superior Court (Nichols),* 165 Ariz. 38, 41, 796 P.2d 470, 473 (1990) (duty requires the

exercise of care for protection against *unreasonable* risks of harm). Here, appellants presented no evidence that a high school student who is off campus in violation of school rules poses an unreasonable risk of harm. We hold that the legal relationship between the District and its student Thomason did not impose a duty upon the District to control Thomason so as to prevent him from injuring appellants under the facts of this case.

## Assumption of Duty

¶ 31 Appellants also argue that the District's modified closed-campus policy was a duty assumed by the District for appellants' protection as described in Restatement § 324A (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or third person upon the undertaking.

Appellants contend that the District "recognized that enforcement of its modified and supervised closed-campus policy was necessary for the protection of students and other motorists."[7] However, as discussed previ-

---

**6.** The extent of the potential burden which appellants seek to place upon the District is best illustrated by their own expert's view of the undertaking necessary for the District to meet the standard of care before it could set a simple lunch break policy: "undertake a comprehensive study of traffic conditions near and surrounding the campus to ascertain the impact of their modified closed campus policy on nearby traffic volumes and roadway capacities [and] ... evaluate and study distances of actual student destinations during the lunch period."

**7.** Although we will accept for purposes of argument that the District did recognize this, we note that the record does not support so broad a

construction. Appellants cite the deposition testimony of a representative of the District to support their argument that the District knew its policy was intended to protect the public. The excerpt quotes an assistant principal to the effect that the school practices a "good neighbor policy" towards the neighboring community whereby it attempts to provide protection to the general public against certain risks. In the excerpt quoted by appellants, the assistant principal was addressing the school's concern for student conduct that might not be that of a "good neighbor;" she was not discussing student driving. Indeed, the assistant principal clearly recognized the impossibility of the District controlling off-campus conduct and repeatedly emphasized that the Dis-

ously, the District's "recognition" that enforcement of its student supervision policies also acted to protect the public is not, by itself, enough to impose a *duty* to act for the protection of the public. *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368.

¶ 32 In any case, § 324A is inapplicable here. This section operates to create a duty from a voluntary undertaking by one who otherwise has no duty to act. *See Barnum v. Rural Fire Prot. Co.,* 24 Ariz.App. 233, 237, 537 P.2d 618, 622 (1975) (applying Restatement § 323, a related aspect of voluntary undertakings). The District's duty in promulgating and enforcing a modified closed-campus policy for its students was not voluntarily assumed, but already existing.

¶ 33 In addition, because appellants do not argue that subsections (b) or (c) of § 324A apply in this case, a duty under § 324A could be found only if the District's failure to exercise reasonable care to keep students confined to campus at specific times increased the risk of harm from their conduct. Appellants' argument is tantamount to asking us to find that a high school student, when not at school and under the school's supervision, poses an increased risk of harm to the community as a matter of law. We see no basis for such a determination. High school students are not persons of "dangerous propensities" who are "likely to cause bodily harm" if not controlled. There is no evidence that students who sometimes break attendance rules are a danger to the public. Students are not the prisoners of the school; they are members of the community who regularly come and go among us in the activities of daily life.

¶ 34 Moreover, no necessary connection has been established here between a student who leaves campus in violation of the rules and negligent driving. No evidence was presented that a student who leaves *with* permission is less likely to be involved in an automobile accident than one who does not. Many students drive to and from school, to and from jobs, for errands, and for pleasure.

In so doing, they expose themselves and others to the risk of motor vehicle accidents, and it cannot be said as a matter of law that student driving is qualitatively more risky during a daytime school lunch break than at any other time a student driver might be on the road. We are unwilling to hold that students outside the reach of school supervision pose an increased risk of harm to the general public.

### "Rush Hour" Mentality

¶ 35 Appellants contend that the District's "rigid time limit" for lunch created a "rush-hour" mentality for student drivers. They claim that the District should have known that students were regularly driving to Desert Sky Mall for lunch and that not enough time was allocated for them to make such a trip safely. They further contend that the time schedule issue makes this case similar to *Bishop* and *Rudolph.*

¶ 36 Again, we disagree. The time schedules in both *Bishop* and *Rudolph* were relevant to whether a duty had been breached, not whether one existed. Because we hold that the District had no duty to appellants, the District cannot be liable to them based upon student lunch-hour time schedules, even if such schedules might be "negligently" imposed. *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368.

### No Breach of Duty

¶ 37 Even if this court accepted appellants' argument that the District owed them a duty, summary judgment would nonetheless be appropriate. The evidence viewed most favorably to appellants fails to establish a breach of duty. Thomason's sneaking off campus did not increase the ordinary risk of vehicular harm that appellants would have faced if Thomason left campus with permission. Imposing a time limit on lunch, as done by virtually all schools and most employers, did not create an unreasonable risk of harm.[8] This case is indistinguishable from *Rogers* and *Tollenaar.* Here, as in those

---

trict's policy was to discipline only that conduct which affected the entire student body.

8. As discussed above in note 6, the burden appellants would have us impose on the District in determining the length of the lunch break is not reasonable.

cases, appellants were exposed only to the ordinary risks of vehicular collision that "members of our mobile society face ... whenever they are in cars." *Rogers,* 170 Ariz. at 403, 825 P.2d at 24.

## CONCLUSION

¶ 38 The judgment of the trial court is affirmed.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and EDWARD C. VOSS, Judge.