343 P.3d 931

**Elizabeth BOISSON, individually and on behalf of all statutory beneficiaries, Plaintiff/Appellant,**

**v.**

**ARIZONA BOARD OF REGENTS, a public entity; State of Arizona, a public entity; Nanjing American University, L.L.C., an Arizona corporation doing business as, or under the trade name of Yangtze International Study Abroad, Defendants/Appellees.**

**No. 1 CA–CV 13–0588.**

Court of Appeals of Arizona, Division 1.

March 10, 2015.

Morgan Boisson. The judgment was based on the ground that Defendants owed no duty to Morgan when, while studying abroad in China, he traveled to Tibet and died of altitude sickness. Finding no error, this court affirms.

## FACTS[1] AND PROCEDURAL HISTORY

¶ 2 Morgan was an undergraduate student at the University of Arizona, which is governed by the Arizona Board of Regents (ABOR). In the fall of 2009, Morgan and 16 other university students spent the semester studying in China at Nanjing American University (NAU). This study-abroad program, sometimes referred to as Yangtze International Study Abroad (YISA), was a collaborative effort between ABOR and NAU.

¶ 3 While in China, the study-abroad program included school-sponsored trips to various cities in China with NAU faculty. At other times, the students organized their own trips. During a student-organized trip, 14 study abroad students—including Morgan—flew to Lhasa, Tibet. The students then drove to the Mount Everest base camp a few days later. While at base camp, which is approximately 18,000 feet above sea level, Morgan developed and then died of altitude sickness.

Knapp & Roberts, P.C. By Craig A. Knapp, Dana R. Roberts, David L. Abney, Scottsdale, Counsel for Plaintiffs/Appellants.

Garrey, Woner, Hoffmaster & Peshek, P.C. By Shawna M. Woner, Stephanie Kwan, Scottsdale, Counsel for Defendants/Appellees Arizona Board of Regents and State of Arizona.

Udall Law Firm, LLP By Peter Akmajian, Janet Linton, Tucson, Counsel for Defendants/Appellees Nanjing American University, L.L.C., dba Yangtze International Study Abroad.

Judge SAMUEL A. THUMMA delivered the decision of the Court, in which Presiding Judge MARGARET H. DOWNIE and Judge ANDREW W. GOULD joined.

¶ 4 As relevant here, Elizabeth filed a complaint against the State of Arizona, ABOR and NAU (collectively Defendants), asserting a wrongful death negligence claim pursuant to Arizona Revised Statutes (A.R.S.) sections 12–611 to –613 (2015).[2] After discovery, motion practice and oral argument, the superior court granted Defendants' motions for summary judgment on the ground that Defendants "owed no affirmative duty of care to Morgan while he was a participant on the subject trip to Tibet." After entry of judgment, Elizabeth timely appealed. This court has jurisdiction pursuant to the Arizona Con-

## OPINION

THUMMA, Judge:

¶ 1 Elizabeth Boisson appeals from a judgment dismissing a wrongful death negligence claim arising out of the death of her son

1. The superior court struck supplemental filings relating to the summary judgment briefing and, on Elizabeth's motion, struck portions of certain declarations filed by Defendants. Because the judgment is properly affirmed on other grounds, this court does not address these issues or the finding that there were no disputed issues of material fact. *See Monroe v. Basis School, Inc.,*

234 Ariz. 155, 157 n. 1 ¶ 3, 318 P.3d 871, 873 n. 1 (App.2014).

2. Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

stitution, Article 6, Section 9, and A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1).

## DISCUSSION

### I. Duty In An Arizona Common Law Negligence Claim.[3]

¶ 5 Although described in various ways, a plaintiff alleging a claim for negligence under Arizona common law has the burden to show: (1) duty; (2) breach of that duty; (3) cause-in-fact; (4) legal (or proximate) causation and (5) resulting damages. *See, e.g., Gipson v. Kasey,* 214 Ariz. 141, 143 ¶ 9, 150 P.3d 228, 230 (2007); *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983); *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). "The first element, whether a duty exists, is a matter of law for the court to decide." *Gipson,* 214 Ariz. at 143 ¶ 9, 150 P.3d at 230 (citation omitted).

The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case. As a legal matter, the issue of duty involves generalizations about categories of cases. Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." . . . .

Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained. Thus, a conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct.

*Gipson,* 214 Ariz. at 143–44 ¶¶ 10–11, 150 P.3d at 230–31 (citations omitted).

¶ 6 As noted by the Arizona Supreme Court, pre–2007 case law addressing duty "created 'some confusion and lack of clarity . . . as to what extent, if any, foreseeability issues bear on the initial legal determination of duty.' " *Gipson,* 214 Ariz. at 144 ¶ 15, 150 P.3d at 231 (citation omitted). *Gipson,* however, expressly held "that foreseeability is

not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions." 214 Ariz. at 144 ¶ 15, 150 P.3d at 231. Accordingly, foreseeability is not a part of the duty inquiry and those portions of *pre-Gipson* cases relying on foreseeability when addressing the issue are no longer valid.

¶ 7 Although a duty can arise in various ways, Elizabeth argues: (1) the student-school relationship imposes a duty on Defendants here and (2) public policy imposes such a duty. Recognizing the concept of duty is context dependent, *Gipson* indicates that duty may arise from the relationship between the parties or, alternatively, from public policy considerations. *Gipson,* 214 Ariz. at 145 ¶ 18, ¶ 23, 150 P.3d at 232; *accord Monroe v. Basis School, Inc.,* 234 Ariz. 155, 157 ¶ 5, 159 ¶ 12, 318 P.3d 871, 873, 875 (App.2014); *see also Randolph v. Ariz. Bd. of Regents,* 19 Ariz.App. 121, 123, 505 P.2d 559, 561 (App. 1973) ("No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.").

### A. Duty Based On The Student–School Relationship.

#### 1. Context Of The Duty.

¶ 8 "The student-school relationship is one that can impose a duty within the context of the relationship." *Monroe,* 234 Ariz. at 157 ¶ 5, 318 P.3d at 873. Arizona case law shows the duty most clearly applies in on-campus activities in the primary and secondary school context, where the relationship is custodial. *Monroe,* 234 Ariz. at 158 ¶ 9, 318 P.3d at 874. Arizona case law is less clear whether and to what extent the duty applies in off-campus activities in the primary and secondary school context. *See Alhambra Sch. Dist. v. Superior Court,* 165 Ariz. 38, 41–42, 796 P.2d 470, 473–74 (1990) (holding school district owed duty to high school student injured in elementary school-created crosswalk); *Collette v. Tolleson Unified Sch. Dist., No. 214,* 203 Ariz. 359, 54 P.3d 828 (App.2002) (holding school owed no

---

3. Because the parties do not claim that any other law applies, this court applies Arizona law. *See*

*Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 501, 917 P.2d 222, 230 (1996).

duty to third party who was injured by high school student who left campus in violation of school policy).

¶ 9 In the college and university context, courts in other jurisdictions "are split on whether a college owes an affirmative duty to its students." Restatement (Third) of Torts: Physical and Emotional Harm § 40 Reporters' Notes cmt. 1 (2012) (Restatement) (citing cases). Arizona case law, however, indicates a college or university does owe its students a duty of reasonable care for on-campus activities. See Jesik v. Maricopa Cnty. Cmty. Coll. Dist., 125 Ariz. 543, 611 P.2d 547 (1980); see also Delbridge v. Maricopa Cnty. Cmty. Coll. Dist., 182 Ariz. 55, 58–59, 893 P.2d 55, 58–59 (App.1994) (holding college owed duty to student for injury incurred during college class, even though college did "not have a permanent campus"). It is undisputed that the Tibet trip was not an on-campus activity.

¶ 10 The parties have cited, and the court has found, no Arizona case addressing whether a college or university owes its students a duty of reasonable care for off-campus activities. Section 40(b)(5) of the Restatement, applied by the Arizona Supreme Court in a different context, imposes a "duty of reasonable care with regard to risks that arise within the scope of the relationship" for "a school with its students." Restatement § 40(a), (b)(5).[4] As framed by the parties, Restatement § 40 provides that a college or university may owe a duty to its student "to risks that occur while the student is at school or otherwise engaged in school activities." Restatement § 40 cmt. 1 (emphasis added). No Arizona case has recognized a duty by a university or a college in any context comparable to this case. In addition, Restatement § 40, in its final form, was promulgated in 2012, meaning there is comparatively little guidance in construing "otherwise engaged in school activities." Restatement § 40 cmt. 1. This lack of authority is significant given that Elizabeth has the burden to show the existence of a duty. Gipson, 214 Ariz. at 143 ¶ 9, 150 P.3d at 230.

¶ 11 Recognizing that the existence of duty is a legal, not a factual, matter, Gipson cautioned against "a fact-specific analysis of the relationship between the parties" in determining whether a duty of care exists. Gipson, 214 Ariz. at 145 ¶ 21, 150 P.3d at 232 (considering whether duty existed in a case not involving a categorical relationship). Accordingly, this court does not look at "the parties' actions" alleged to determine "if a duty exists." Id. at 145 ¶ 21, 150 P.3d at 232. Instead, this court looks to the legal factors identified elsewhere to determine whether the Tibet trip was an off-campus school activity for which Defendants owed Morgan a duty of reasonable care. See Barkhurst v. Kingsmen of Route 66, Inc., 234 Ariz. 470, 472–75 ¶¶ 10–18, 323 P.3d 753, 755–58 (App. 2014) (citing cases); Wickham v. Hopkins, 226 Ariz. 468, 471–73 ¶¶ 13–23, 250 P.3d 245, 248–50 (App.2011) (citing cases); see also Monroe, 234 Ariz. at 157–59 ¶¶ 5–11, 318 P.3d at 873–75.

## 2. The Trip Was Not An Off–Campus School Activity For Which Defendants Owed Morgan A Duty.

¶ 12 In the college and university setting, duty is not governed by custody or in loco parentis concepts. Delbridge, 182 Ariz. at 59, 893 P.2d at 59; see also Randolph v. Ariz. Bd. of Regents, 19 Ariz.App. 121, 123, 505 P.2d 559, 561 (App.1973) ("There comes a time when an individual must take it upon himself to be responsible for his own education and well-being. No person can be insulated against all the risks of living."). Similarly, "[t]he scope of the duty imposed by the student-school relationship is not limitless." Monroe, 234 Ariz. at 157 ¶ 6, 318 P.3d at 873. "[T]he duty is tied to expected activities within the relationship. Therefore, in the student-school relationship, the duty of care is bounded by geography and time, encompassing risks such as those that occur while the student is at school or otherwise under the school's control." Id. at

---

4. In the common carrier context, Nunez v. Professional Transit Mgmt. of Tucson, Inc., applied Restatement § 40 Proposed Final Draft No. 1 (2007). 229 Ariz. 117, 121 ¶¶ 17–18 & n. 2, 271

P.3d 1104, 1108 & n. 2 (2012); see also Monroe, 234 Ariz. at 157 ¶ 5, 318 P.3d at 873 (citing Restatement § 40 in primary school context).

157–58 ¶ 6, 318 P.3d at 873–74 (citing cases and Restatement § 40(b)(5) cmts. f, 1).

¶ 13 In what are at best analogous contexts, Arizona cases have identified the following factors in determining whether an off-campus activity is deemed a school activity: (1) the purpose of the activity, *Collette,* 203 Ariz. at 363 ¶ 16, 54 P.3d at 832; (2) whether the activity was part of the course curriculum, *Delbridge,* 182 Ariz. at 59, 893 P.2d at 59; (3) whether the school had supervisory authority and responsibility during the activity, *id.; Monroe,* 234 Ariz. at 161 ¶ 18, 318 P.3d at 877; and (4) whether the risk students were exposed to during the activity was independent of school involvement, *Collette,* 203 Ariz. at 365 ¶ 23, 54 P.3d at 834. Courts elsewhere also have looked at whether (5) the activity was voluntary or was a required school activity; (6) whether a school employee was present at or participated in the activity or was expected to do so and (7) whether the activity involved a dangerous project initiated at school but built off campus. *See* 5 James A. Rapp & Jonathan M. Astroth, *Education Law* § 12.09[6][c] (2014) (citing cases).

¶ 14 Applying these factors, the Tibet trip was conceived by exchange students who wanted to see Mount Everest, not for any NAU-related purpose. After doing some research, a student made arrangements directly with Tibettours, a Tibet-based tour company, which then set the itinerary, arranged trip details and served as a guide during the trip. Fourteen of the 17 study abroad students then went on the trip and paid Tibettours directly, or through the coordinating students. The trip, details of the trip and the cost of the trip were not part of the study-abroad program or any course curriculum, and no academic credit was awarded for the trip. At the students' request, NAU student liaison Zhang Fan helped the students communicate with Tibettours and arrange flights, and also provided a letter, required by the Chinese government to secure required permits, stating the students were NAU students. At the students' request, the professors agreed to allow the students to make up classes they missed if they participated in the trip. Defendants had no supervisory authority over, or responsibility for, the trip, and no faculty or staff went on the trip. The risk of altitude sickness was present independent of any involvement by Defendants and the trip did not involve a potentially dangerous project initiated at school but built off campus. Accordingly, applying these factors, the Tibet trip was not an off-campus school activity for which Defendants owed Morgan a duty under Arizona law. *See Monroe,* 234 Ariz. at 159 ¶ 11, 318 P.3d at 875; *Collette,* 203 Ariz. at 363 ¶ 16, 54 P.3d at 832; *Delbridge,* 182 Ariz. at 59, 893 P.2d at 59; *see also* Rapp & Astroth, *Education Law* § 12.09[6][c] (citing cases).[5]

¶ 15 Elizabeth argues that the Tibet trip was a school activity because: (1) Defendants "knew that study-abroad programs pose dangers," and issued students cell phones to "safeguard … [them] during their study-abroad program;" (2) 14 of the 17 exchange students participated in the trip; (3) Defendants let students make up the classes they missed during the trip and (4) the trip would not have been possible without Fan's assistance.

¶ 16 Defendants' purported knowledge that participating in the study-abroad program would involve "risks not found in study at" the University of Arizona in Tucson does not help answer whether the trip was a school activity. *See Gipson,* 214 Ariz. at 144 ¶ 15, 150 P.3d at 231 (rejecting foreseeability as factor in determining duty). Similarly, providing the students cell phones "with which they can contact faculty and staff to answer questions and solve problems day or night from any part of China" does not make the Tibet trip a school activity. And although many study-abroad students decided to go on the trip, some did not. Allowing

5. This does not mean that a university or college lacks a duty to protect its students for activities occurring off campus on property owned or controlled by the university or college, or for off-campus functions controlled or regulated by the university or college. *See, e.g., Barkhurst,* 234 Ariz. at 473–74 ¶¶ 12–14, 323 P.3d at 756–57 (discussing *Estate of Hernandez v. Ariz. Bd. of Regents,* 177 Ariz. 244, 866 P.2d 1330 (1994)); *accord Monroe,* 234 Ariz. at 157–58 ¶ 6 n. 2, 318 P.3d at 873–74 n. 2 (citing *Delbridge,* 182 Ariz. at 59, 893 P.2d at 59).

classes to be made up at the students' request similarly does not mean the trip was a school activity and the record suggests that students would have gone to Tibet even if it meant they could not make up classes they missed. Finally, it may be that the trip would not have been possible but for Fan's assistance in response to the students' request. That, however, does not mean Defendants owed Morgan a duty while on the trip. No authority cited holds the existence of a duty turns on whether a defendant made something possible. Indeed, such a rule would mean an almost unlimited number of individuals and entities could be found to have owed a duty here, including the airline that flew the students to Tibet, the manufacturer of that airplane and the provider of the airplane fuel. Although a "but for" inquiry often is relevant in determining whether a plaintiff has shown causation after a duty and its breach are established, it does not address whether a duty exists. *See id.* at 145 ¶ 21, 150 P.3d at 232.

¶ 17 Nor does Elizabeth's reliance on 2007 and 2009 YISA brochures and an affiliation agreement between YISA and the University of Arizona alter the analysis. The substance of the 2009 brochure is not contained in the record. The description attributed to the brochure ("Additional Travel Opportunities," noting "that students in past programs had visited Tibet") does not make the trip here a school activity. Presuming the 2007 brochure applied to the Fall 2009 program, that document states: (1) "[i]ncluded in your program fee will be trips to important cities or sites in China;" (2) in addition, "students will have a week or more of time off to travel on their own" and (3) "[o]ur staff will help with all aspects of planning these trips throughout China." That Defendants may have helped students plan "travel on their own" does not impose on Defendants a duty for the student-planned Tibet trip. Similarly, YISA agreeing to provide "student support services—translation assistance, travel planning, and emergency assistance"—does not impose

upon Defendants a duty to protect students from harms in the student-planned Tibet trip.

¶ 18 Elizabeth also argues on appeal that selected excerpts from ABOR's internal code of conduct mean the Tibet trip was a school activity. Although Elizabeth cited this document in superior court to show that the exchange program was an ABOR-sponsored activity, she did not argue it established a duty. By not pressing that argument then, Elizabeth cannot do so now. *See Fisher v. Edgerton,* 236 Ariz. 71, 75 n. 2 ¶ 9, 336 P.3d 167, 171 n. 2 (App.2014).[6] Even absent waiver, Elizabeth has not shown how ABOR's code of conduct—addressing "misconduct ... subject to disciplinary action" and "the promotion and protection" of "an environment that encourages reasoned discourse, intellectual honesty, openness to constructive change and respect for the rights of all" at state universities—makes the Tibet trip a school activity imposing a duty on Defendants.

¶ 19 Finally, Elizabeth relies on the opinions of Dr. William W. Hoffa, her "standard of care" expert, who took the position that study-abroad programs should categorically owe a duty to students throughout all aspects of the program. But the question of whether a duty exists is an issue of law for the court to decide, not experts. *Badia v. City of Casa Grande,* 195 Ariz. 349, 354 ¶ 17, 988 P.2d 134, 139 (App.1999) ("The issue of whether a duty exists is a question of law for the court, unaffected by expert opinion."); *see also Monroe,* 234 Ariz. at 157 ¶ 4, 318 P.3d at 873 (existence of duty "is a matter of law for the court to decide") (citing *Gipson,* 214 Ariz. at 143 ¶ 9, 150 P.3d at 230). Moreover, as Elizabeth concedes, Dr. Hoffa's testimony goes to the standard of care and other issues that are premised on the existence of a duty. *See Gipson,* 214 Ariz. at 143–44 ¶¶ 10–11, 150 P.3d at 230–31 (citations omitted). Accordingly, Dr. Hoffa's opinions do not resolve the question of whether a duty exists.

---

**6.** Similarly, Elizabeth alleged negligence per se in superior court based on ABOR's internal code of conduct, but did not further develop that claim. *See Fisher,* 236 Ariz. at 75 n. 2 ¶ 9, 336 P.3d at 171 n. 2; *see also Steinberger v. McVey,*

234 Ariz. 125, 139 ¶ 56, 318 P.3d 419, 433 (App. 2014) (noting negligence per se claim "must be based on a statute enacted 'for the protection and safety of the public' ") (citation omitted).

¶ 20 For these reasons, the superior court properly concluded that the Tibet trip was not an off-campus school activity for which Defendants owed Morgan a duty.

### B. Duty Based On Public Policy.

¶ 21 In discussing whether public policy should recognize a duty here, Elizabeth

> cites no public policy authority, and we are aware of none, supporting a general duty of care against harm away from school premises, absent a school-supervised activity or a particular statute. To hold otherwise would imply that the student-school relationship extends to situations where the school lacks custody over the student and the student is not participating in a school-sponsored activity. We decline to define the scope of duty in such broad terms.

*Monroe*, 234 Ariz. at 161 ¶ 20, 318 P.3d at 877. For these reasons, Elizabeth has not shown that public policy considerations result in Defendants owing Morgan a duty for the Tibet trip.

### II. Other Issues On Appeal.

¶ 22 Having found Defendants did not owe Morgan a duty for the Tibet trip, this court affirms the judgment and need not address the other issues raised on appeal. ABOR's request for taxable costs on appeal is granted contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶ 23 The judgment in favor of Defendants is affirmed.