NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHELLE DELLINGER,
*Plaintiff/Appellant*,

*v.*

BASAMI HOUSE LLC,
*Defendant/Appellee.*

No. 1 CA-CV 18-0688
FILED 10-31-2019

Appeal from the Superior Court in Maricopa County
No. CV2016-015252
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Joseph F. Gmuca, PC, Phoenix
By Joseph F. Gmuca
*Co-Counsel for Plaintiff/Appellant*

Wright, Welker & Pauole, PLC, Phoenix
By Matthew W. Wright, Christopher S. Welker, Richard R. Carpenter
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**J O H N S E N**, Judge:

¶1         Scott Smith was a 17-year-old resident of Basami House, a group home in Phoenix for minors with substance abuse and other behavioral issues.  At the request of his mother, Basami House allowed him to visit his aunt in Tempe for a few days.  There, Smith became drunk one night and walked out.  Eventually he encountered Michelle Dellinger, a woman he did not know, followed her on foot for two miles and then brutally assaulted her.  Dellinger sued Basami House, alleging its negligent supervision of Smith allowed him to injure her.  The superior court ruled Basami House owed no duty to Dellinger and entered summary judgment against her.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Basami House is a behavioral-health residential facility licensed by the Arizona Department of Health Services.  It has room for five youths, whom it does not restrain or confine.  Based on a psychiatrist's recommendation, Smith was referred to Basami House by the Navajo Regional Behavioral Health Authority.  Smith had been staying at Basami House for nearly four months before his attack on Dellinger; his mother had authorized him to leave to visit his aunt twice before.

¶3         In her complaint, Dellinger alleged Basami House "entered into a 'special relationship' with Smith by which it assumed a duty to exercise control over Smith's conduct and behavior," which she alleged gave rise to "a duty to use reasonable care in exercising control over the conduct of Smith."  Dellinger further alleged that "Basami House knew or should have known that Smith was likely to cause bodily harm to others" and asserted it was "reasonably foreseeable" that Smith would attack someone.

¶4         Basami House moved for summary judgment, arguing it owed no duty to Dellinger.  The superior court agreed, finding Dellinger

offered "no admissible evidence that Basami House knew or should have known that" Smith, if not controlled, was likely to cause harm to others.

¶5          Dellinger timely appeals.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).[1]

## DISCUSSION

¶6          "To establish a claim for negligence, a plaintiff must prove . . . a duty requiring the defendant to conform to a certain standard of care."  *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007).  Whether a duty exists is a question of law for the court to decide.  *Id.*  We review the grant of summary judgment *de novo*, *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383, 385, ¶ 10 (2018), viewing all facts and reasonable inferences "in the light most favorable to the party against whom judgment was entered," *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2 (App. 1998).

### A.     Duty Under the Restatement.

¶7          Dellinger argues Basami House owed her a duty under two provisions of the Restatement (Second) of Torts (1965) ("Restatement").  The first is § 315, which, as applicable here, states the general principle that one has "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct."  *See also Hamman v. Maricopa County*, 161 Ariz. 58, 64 (1989) (duty arises under § 315 "[w]hen a psychiatrist determines, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others").

¶8          The second Restatement section on which Dellinger relies is § 319, which provides:

> One who takes charge of a third person whom he knows or
> should know to be likely to cause bodily harm to others if not

---

[1]          Absent material revision after the relevant date, we cite the current version of a statute or rule.

controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*See also Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 267 (1977).

**¶9**   Because duty in this context turns on whether Basami House knew or should have known Smith was likely to cause harm, Dellinger contends the superior court erred by deciding the issue as a matter of law. She further contends she offered evidence sufficient to show Basami House knew or should have known Smith was likely to cause bodily harm.

**¶10**   Addressing Dellinger's preliminary assertion first, as noted, whether a duty exists is a question of law that the court decides, not the jury. *Gipson*, 214 Ariz. at 143, ¶ 9. Our supreme court has been emphatic about this principle. *See Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564, ¶ 7 (2018); *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015); *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 268, ¶ 10 (2010); *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985). "[F]actual inquiries" concerning breach and causation are for the jury, but the court decides "the existence of duty as a threshold legal issue." *Gipson*, 214 Ariz. at 144, ¶¶ 16-17.

**¶11**   *Quiroz* and *Gipson* both acknowledged that duties may arise from special relationships, including those described in the Restatement provisions at issue here. *See Quiroz*, 243 Ariz. at 565, ¶ 14 (citing Restatement §§ 316-319); *Gipson*, 214 Ariz. at 145, ¶ 19 (citing Restatement § 315). But in neither decision did the court specify whether the factfinding required to ascertain the existence of such a special relationship is reserved for the court.

**¶12**   Dellinger argues that when the existence of a duty turns on what the defendant knew or should have known, that is a preliminary issue the finder of fact must decide. In response to our request for supplemental briefing on this question, Dellinger cites *Noriega v. Town of Miami*, 243 Ariz. 320, 327, ¶ 31 (App. 2017), and *Estate of Maudsley v. Meta Servs., Inc.*, 227 Ariz. 430, 437, ¶ 23 (App. 2011).

**¶13**   As relevant here, *Noriega* addressed whether police knew "of a potential threat and [told] the victim that they will take action on that threat" or had made a "specific promise or representation" on which the victim might reasonably rely. 243 Ariz. at 327-28, ¶ 32 (quoting *McGeorge v. City of Phoenix*, 117 Ariz. 272, 277 (App. 1977)). Citing *Maudsley*, we held the superior court erred by entering summary judgment against the victim

because the existence of the duty depended on a "preliminary question that must be determined by a fact finder." 243 Ariz. at 328, ¶ 34.

**¶14** The issue in *Maudsley* was whether the defendant physicians owed a doctor-patient duty to a victim. 227 Ariz. at 434, ¶ 11. We noted *Gipson* held that the existence of a duty is a question of law, but we cited *Diggs v. Ariz. Cardiologists, Ltd.*, 198 Ariz. 198, 200, ¶ 11 (App. 2000), for the proposition that "the existence of a duty may depend on preliminary questions that must be determined by a fact finder." *Maudsley*, 227 Ariz. at 437, ¶ 23. As we explained, "[t]he superior court was not in a position to determine whether [the physicians'] involvement with [the victim] . . . gave rise to a duty of care until the finder of fact determined the preliminary question of whether a doctor-patient relationship existed." *Id.* at ¶ 25. We acknowledged that "it may be argued [that] *Gipson*'s direction to avoid 'fact-specific analysis' in analyzing whether a duty existed abrogated the rule that a factfinder may need to decide preliminary issues of fact before a court can find whether a duty existed." *Id.* at ¶ 23, n.9 (quoting *Gipson*, 214 Ariz. at 145, ¶ 21). Noting that *Gipson* acknowledged that duties may be created by special relationships, however, we concluded, "we do not think *Gipson* went that far." *Id.*[2]

---

[2] Two unpublished decisions also followed *Maudsley* on this issue. *Skoglund v. Neste Dev. Nev., L.L.C.*, 1 CA-CV 12-0429, 2013 WL 1906233, at *2, *4, ¶¶ 9, 18 (Ariz. App. May 7, 2013) (mem. decision) (whether plaintiff was business invitee, licensee or trespasser was for the jury to decide); *Perez v. Thrush*, 1 CA-CV 12-0316, 2013 WL 773042, at *4, ¶ 21 (Ariz. App. Feb. 28, 2013) (mem. decision) (whether plaintiff was a tenant was for the jury to decide). *But see Camelback Plaza W., L.L.C. v. CBRE, Inc.*, 1 CA-CV 16-0144, 2017 WL 1739114, at *3, ¶ 12 (Ariz. App. May 4, 2017) (mem. decision) (questioning but not deciding whether, after *Gipson*, the factfinder must decide questions on which existence of duty turns).

¶15          Here, we need not decide whether the factual predicate of a duty under Restatement § 319 is for the court or for the jury because we conclude that Dellinger failed to offer evidence sufficient to create a genuine issue of fact about whether Basami House knew or should have known Smith was likely to injure someone.[3]

¶16          There is no dispute about the brutality of Smith's assault on Dellinger.  He pled guilty to aggravated assault and three counts of attempted sexual assault, and the court sentenced him to ten years in prison.  The question presented on summary judgment, however, was whether Dellinger offered evidence to show Basami House knew or should have known before it allowed Smith to visit his aunt that he was likely to become violent if not controlled.

¶17          Dellinger asserts Smith committed several "violent" felonies before he was admitted to Basami House.  She contends that, at a minimum, Basami House should have learned of those crimes and should have concluded from them that he was likely to harm someone.  But the only specific criminal conduct Dellinger cites is that Smith broke into a car and slashed its tires several weeks before he was admitted to Basami House.  Although concerning, that event does not show Smith was likely to commit a violent assault, and Dellinger offered no evidence he had caused or threatened to cause bodily harm to anyone else before he assaulted her.

¶18          Dellinger points out that Smith told a therapist at Basami House that he had used alcohol and marijuana for three years and had been expelled from high school for using drugs on campus.  Dellinger also cites the opinion of Joni Diamond, a licensed clinical social worker, "that juveniles such as Scott Smith when intoxicated are more likely to engage in [c]riminal and anti-social behavior including aggressive and violent conduct."  Diamond's opinion, however, does not explain what "more likely" means in this context.  And a general assertion about "juveniles such as" Smith does not suffice in the absence of facts specific to him from which Basami House knew or should have known he was likely to become violent when he drank.  For the same reason, Smith's presentence report, which

---

[3]       For the same reason, we do not reach the question of whether Basami House had sufficient control over Smith to give rise to a duty.  *See Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 473, ¶ 10 (App. 2014) ("The formation of a special relationship is often based on some aspect of control.").

states he had a "history of violent behavior," also is insufficient in the absence of evidence of actual violent acts or threats of violent acts.

**¶19** Dellinger asserts in general fashion that "[w]hile staying at Basami House, Smith was defiant, uncooperative, non-compliant, and disobedient." The episodes on which this characterization is based, however, belie Dellinger's assertion that it should have been clear to Basami House that Smith was likely to commit an assault. Records showed he had once walked away from Basami House without permission and shoplifted some beer, and he stole some cold medicine on an authorized trip to a grocery store. He also returned drunk from a prior visit to his aunt's house. None of these events hinted that he was likely to become violent.

**¶20** Dellinger also relies heavily on Diamond's opinion that Basami House fell below the standard of care in admitting Smith and allowing him to stay after he failed to remain sober. The question, however, is whether Basami House owed Dellinger a duty, not whether it breached a duty. "[T]he existence of a duty is not to be confused with details of the standard of conduct." *Markowitz*, 146 Ariz. at 355. If the defendant owes the plaintiff no duty, "the defendant is not liable even though he may have acted negligently in light of the foreseeable risks." *Id.* at 356. In other words, an "expert witness cannot create a duty through [her] opinions and beliefs, when the law does not recognize any such duty." *Hafner v. Beck*, 185 Ariz. 389, 393 (App. 1995).

¶21 In sum, the record contains no evidence to support Dellinger's assertion that Basami House knew or should have known that Smith was likely to cause bodily harm to another. Absent that showing, the superior court did not err in ruling on summary judgment that no duty existed under Restatement §§ 315 and 319.[4]

## B. Duty Under A.R.S. § 36-1201.

¶22 Dellinger also asserts that A.R.S. § 36-1201 (2019) imposed a duty on Basami House to control Smith. Public policy articulated in a state statute can give rise to a duty. *See Quiroz*, 243 Ariz. at 565, ¶¶ 14-15. In Dellinger's view, § 36-1201 reflects a public policy imposing a duty in this case, and she also argues that a violation of § 36-1201 constitutes negligence per se.

¶23 When a state agency or regional behavioral health authority contracts with a group home, § 36-1201(A) mandates certain terms in their contract. Relevant here is the requirement in § 36-1201(A)(2) that "[t]he group home is responsible for the supervision of the residents while in the group home environment or while residents are engaged in any off-site activities organized or sponsored by and under the direct supervision and control of the group home or affiliated with the group home." Dellinger argues this requirement imposed a duty on Basami House to adequately control Smith.

¶24 The language on which Dellinger relies, however, relates only to "off-site activities organized or sponsored by and under the direct supervision and control of the group home or affiliated with the group

---

4 Dellinger argues Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 41 (2012) ("Restatement (Third)") imposed a duty on Basami House. That provision is titled "Duty to Third Parties Based on Special Relationship with Person Posing Risks," and replaces Restatement (Second) §§ 315(a) and 319. Restatement (Third) § 41 cmt. a. Section 41 lists specific relationships that may create a duty to control the conduct of another, including a relationship of "a mental-health professional with patients." We need not decide whether § 41 reflects the sort of doctrinal shift in Restatement (Third) that our supreme court has rejected. *See Quiroz*, 243 Ariz. at 572-79, ¶¶ 52-89. That is because § 41 may create a duty only when, as under Restatement (Second) § 319, the actor knows or should know that the person may harm another. *See* Restatement (Third) § 41 cmt. c ("If the actor neither knows nor should know of a risk of harm, no action is required.").

home."  A.R.S. § 36-1201(A)(2).  Assuming without deciding that § 36-1201(A)(2) might impose a duty, that duty would extend only to off-site activities under the direct control of the group home or affiliated with it. The statute does not apply when a group home resident is "off-site" on his own, rather than as part of an activity "organized or sponsored by . . . or affiliated with" the group home.  *Id.*  We will not construe a statute to create a duty of care in circumstances to which the statute does not apply.  *See Collette v. Tolleson Unified School Dist., No. 214*, 203 Ariz. 359, 364, ¶ 18 (App. 2002) ("no benefit in imposing a duty upon a school district concerning the conduct of students over which it has no control").

**¶25**       Smith had been released to his aunt at his mother's request. His visit to aunt's home was an act he took on his own, with his mother's authorization; it was not an activity that Basami House organized or sponsored.  Whatever duty § 36-1201(A) might impose, it does not extend to this case.

## CONCLUSION

**¶26**       Because Dellinger failed to offer evidence to show Basami House was in a special relationship giving rise to a duty under Restatement (Second) of Torts §§ 315 and 319 or otherwise owed a duty under public policy found in A.R.S. § 36-1201(A), we affirm the judgment of the superior court.



AMY M. WOOD • Clerk of the Court
FILED:  AA